# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JERRY ERWIN ASSOCIATES, INC.,
d/b/a JEA Senior Living,

       Plaintiff,

vs.                                       No. CIV 16-0016 JB/LF

ESTATE OF LUCILLE ASHER, Deceased,
by and through Personal Representative,
KEVIN ZANGARA,

       Defendant.

# MEMORANDUM OPINION[1]

     **THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion to Compel Arbitration, filed January 8, 2016 (Doc. 2)("Motion"); and (ii) the Defendant's Motion to Dismiss Plaintiff's Complaint to Compel Arbitration and Memorandum Brief in Support, filed February 4, 2016 (Doc. 15)("Zangara's Motion"). The Court held a hearing on March 29, 2016. The primary issues are: (i) whether the Court has subject-matter jurisdiction in this case because of the parties' diversity, despite the existence of possible non-diverse parties in the underlying state court action who are not before this Court; (ii) whether decedent Lucille Asher's conservator had the authority to bind Lucille Asher and her estate to the Arbitration Agreement, Resident Admission Agreement at 3, filed January 8, 2016 (Doc. 3-2)("Arbitration Agreement"); (iii) whether the Arbitration Agreement is within the scope of the Federal Arbitration Act, 9

---

[1]The Court previously issued an Order that granted the Plaintiff's Motion to Compel Arbitration, filed January 8, 2016 (Doc. 2) and denied the requests in Zangara's Motion. <u>See</u> Order at 2, filed September 13, 2016 (Doc. 26)("Order"). In that Order, the Court stated that it would "at a later date issue a Memorandum Opinion more fully detailing its rationale for this decision." Order at 1 n.1. This Memorandum Opinion is the promised opinion and details the Court's rationale for the previous Order.

U.S.C. §§ 1-16 ("FAA"); (iv) whether the claims asserted are within the Arbitration Agreement's scope; (v) whether Plaintiff Jerry Erwin Associates, Inc. ("Erwin Associates") has the power to enforce the Arbitration Agreement, even though it is not a party to the Arbitration Agreement; and (vi) whether the Arbitration Agreement is unconscionable. The Court concludes that: (i) the Court has subject-matter jurisdiction in this case, because the parties before the Court are diverse, and the Court should not "look through" to the state court action to determine diversity; (ii) Lucille Asher's conservator had the authority to bind her and her estate to the Arbitration Agreement; (iii) the Arbitration Agreement is within the FAA's scope; (iv) the claims asserted are within the Arbitration Agreement's scope; (v) Erwin Associates has the power to enforce the Arbitration Agreement; and (vi) the relevant part of the Arbitration Agreement is not unconscionable. Accordingly, the Court grants the Plaintiff's Motion and denies Zangara's Motion.

## FACTUAL BACKGROUND

In 2011, a state district court issued an order appointing a Guardian of Person and a Conservator of the Estate for an elderly woman named Lucille Asher ("L. Asher"). See Order Appointing Guardian of Person and Conservator of Estate of An Incapacitated Person at 3-4, filed January 8, 2016 (Doc. 3-1)("Guardianship Order"). Specifically, the Guardianship Order appointed William R. "Randy" Asher ("W. Asher"), L. Asher's son, as Guardian of Person, and Urbielewicz Murphree CPAs, P.C. ("Murphree CPAs") as Conservator of the Estate. See Guardianship Order at 3-4. The Guardianship Order declares that "William R. 'Randy' Asher shall have the final and ultimate authority to make all medical decisions for the incapacitated person, including but not limited to making decisions regarding where the incapacitated person should reside." Guardianship Order at 4.

W. Asher "decided to try to admit Lucille to North Ridge" Alzheimer's Special Care Center ("North Ridge"), a nursing home that Erwin Associates manages and operates. Defendant's Response to Plaintiff's Motion to Compel Arbitration at 3, filed January 29, 2016 (Doc. 14)("Response 1"); Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Compel Arbitration at 1, filed January 8, 2016 (Doc. 3)("Memorandum"). Erwin Associates has a Management Services Agreement with Albuquerque Care Group, LLC ("Albuquerque Care"), a company that owns the nursing home. See Management Services Agreement at 1, filed February 16, 2016 (Doc. 17-3)("Management Agreement"). According to the Management Agreement, Erwin Associates "will perform all services necessary to provide and maintain quality care and management for the Facility and the Residents . . . including . . . [r]epresenting the Facility in all dealings with regulatory authorities, creditors, Residents, Facility Employees and other personnel and insurers." Management Agreement at 2.

L. Asher was admitted to North Ridge, and Murphree CPAs, but not W. Asher, signed the Resident Admission Agreement. See Arbitration Agreement at 3. The other party to the Arbitration Agreement is "Albuquerque Care Group, LL[C], doing business as North Ridge Alzheimer's Special Care Center" and not Erwin Associates. Arbitration Agreement at 1. In key part, the Arbitration Agreement reads:

> Agreement to Resolve Disputes Through Arbitration:
> The Facility, Resident, and the Resident's Representative agree, as an important and integral part of this Agreement, that any and all claims and disputes arising from or related to this Agreement or to Resident's care, services, or residency at the Facility shall be resolved by submission to neutral, binding arbitration rather than a trial before a judge or jury (except for the specific claims and disputes set forth in the following paragraph). . . . This arbitration clause binds all parties to this Agreement and their spouses, heirs, representatives, executors, administrators, successors, and assigns, as applicable.

Actions Not Subject to Arbitration:
The parties agree that any claim or dispute involving or related to unlawful detainer (eviction) proceedings shall not be subject to arbitration unless both parties agree to arbitrate such proceedings. Furthermore, any action arising out of or relating to this Agreement for which arbitration is not allowed by law, or which the parties have agreed (herein or otherwise) not to arbitrate, shall be brought in the appropriate court before a judge rather than a jury.

Arbitration Agreement at 3. W. Asher, and not Murphree CPAs, signed other forms on L. Asher's behalf, including an Authorization for Medication Assistance and a Notification of Rights and Responsibilities with Incident Reporting. See Arbitration Agreement at 10-11.

L. Asher died in 2012. See Memorandum at 4. Allegedly, "Ms. Asher went to the emergency room . . . [and] [f]ollowing abdominal surgery, she was diagnosed with suspected perforated appendicitis resulting in an abscess and a large area of infection." Estate of Lucille Asher, Deceased, by and through Personal Representative, Kevin Zangara v. JEA Senior Living, Inc., d/b/a North Ridge Alzheimer's Special Care Center, and Tamara Goodman, MD, LLC, ¶ 13, at 3, D-820-CV-2015-00311 (Eighth Judicial District Court, County of Taos, State of New Mexico), in file at January 8, 2016 (Doc. 3-5)("State Court Complaint"). According to the State Court Complaint, "Ms. Asher died . . . of septic shock due to the abdominal infection." State Court Complaint ¶ 14, at 3. Allegedly, North Ridge was negligent "by failing to timely and properly diagnose Ms. Asher's appendicitis." State Court Complaint ¶ 16, at 3. According to the State Court Complaint, "North Ridge was negligent in hiring unqualified staff and in granting clinical privileges to and permitting the continued exercise of clinical privileges by physicians North Ridge knew or reasonably should have known were not qualified to exercise clinical privileges with reasonable skill." State Court Complaint at 4.

Defendant Kevin Zangara was appointed L. Asher's Personal Representative for the purpose of bringing a wrongful death action against Erwin Associates. See Memorandum at 4.

Zangara filed such an action in state district court.  <u>See</u> State Court Complaint ¶ 1, at 1.

<b>PROCEDURAL BACKGROUND</b>

Erwin Associates moves the Court to compel Zangara to arbitrate claims that Zangara has asserted in state court against Erwin Associates.  <u>See</u> Memorandum at 1.  Zangara moves to dismiss the Plaintiff's Motion.  <u>See</u> Zangara's Motion at 1.  The Court will summarize the parties' arguments.

**1.    <u>Erwin Associates' Motion and Memorandum</u>.[2]**

Erwin Associates contends that the claims which Zangara asserts in the state court action are subject to a binding arbitration provision.  <u>See</u> Memorandum at 4.  Erwin Associates further contends that the FAA governs the Arbitration Agreement, because there is a valid written arbitration agreement and the dispute is within the agreement's scope.  <u>See</u> Memorandum at 6.  Erwin Associates asserts that, because Murphree CPAs signed the Arbitration Agreement on L. Asher's behalf, L. Asher and her estate are bound.  <u>See</u> Memorandum at 4.  In the alternative, Erwin Associates argues that L. Asher was "bound to arbitrate as the intended beneficiary and third-party beneficiary" of the Arbitration Agreement, because "the resident is the person named in the agreement who is admitted to the facility and is conferred certain rights and benefits." Memorandum at 9.

Next, Erwin Associates asserts that the Defendant is "estopped from denying the validity of the arbitration provision."  Memorandum at 12.  Specifically, Erwin Associates argues that Murphree CPAs "made a promise to JEA to be bound by the terms in the Admission Agreement, including the arbitration provision.  Thus, Erwin Associates reasonably relied on . . . Murphree's promise to abide by the terms of the arbitration provision."  Memorandum at 12.

---

[2]All of the briefing in support of the Motion is in the Memorandum.

Finally, Erwin Associates contends that the "Defendant's claims are clearly within the scope of the arbitration provision." Memorandum at 13. Erwin Associates notes that the Arbitration Agreement says that "'any and all claims and disputes'" are subject to arbitration, and that the Arbitration Agreement binds all "'spouses, heirs, representatives, executors, administrators, successors, and assigns.'" Memorandum at 13-14. Erwin Associates thus concludes that the claims at issue are within the Arbitration Agreement's scope. <u>See</u> Memorandum at 14. Regarding relief, Erwin Associates requests the Court to grant the Motion and stay the state court proceedings. <u>See</u> Memorandum at 14.

      2.    **<u>Zangara's Response</u>.**

Zangara responds to the Motion and Memorandum. <u>See</u> Response 1 at 1. First, Zangara argues that Erwin Associates is not a real party in interest to this suit. <u>See</u> Response 1 at 6. Zangara concludes that, because Erwin Associates is not a real party in interest, Erwin Associates cannot enforce the Arbitration Agreement. <u>See</u> Response 1 at 6.

Next, Zangara contends that Erwin Associates "cannot enforce the agreement because Erwin Associates is not an intended beneficiary of the agreement." Response 1 at 7. According to Zangara, because Erwin Associates is not mentioned anywhere in the agreement, one cannot say that the parties intended for the agreement to benefit Erwin Associates. <u>See</u> Response 1 at 9. For this reason, Zangara concludes that Erwin Associates "has no right to enforce the Agreement." Response 1 at 9.

Further, Zangara asserts that the Arbitration Agreement is both substantively and procedurally unconscionable. <u>See</u> Response 1 at 12. Regarding substantive unconscionability, Zangara contends that, because the Arbitration Agreement excludes claims from arbitration "involving or related to eviction, the Agreement requires the arbitration of the vast majority of

claims that would be brought by the patient, who is the weaker party, while excluding those disputes that would exclusively be pursued by the nursing home." Response 1 at 12. Regarding procedural unconscionability, Zangara asserts that, because "the Agreement was offered . . . on a take-it-or-leave-it basis," and because the Arbitration Agreement was mandatory, the Arbitration Agreement is procedurally unconscionable. See Response 1 at 13. Zangara adds that the nursing home "had all the bargaining power." Response 1 at 13. Zangara concludes that the Court should deny the Motion. See Response 1 at 14.

3.    **Erwin Associates' Reply.**

Erwin Associates replies to Zangara's Response. See Reply in Support of Plaintiff's Motion to Compel Arbitration, filed February 16, 2016 (Doc. 17)("Reply 1"). Erwin Associates contends that it is a real party in interest, noting that in the state court action, "Defendant sued and served JEA. Defendant, now to avoid arbitration, is claiming that JEA is not a real party in interest." Reply 1 at 3. Erwin Associates also contends that it is a third-party beneficiary to the Arbitration Agreement. See Reply 1 at 3. It notes that the Arbitration Agreement binds the parties' "representatives," "administrators," and "assigns." Reply 1 at 5. Erwin Associates asserts that it is "a representative of, administrator, and assign of Albuquerque Care Group, LLC pursuant to a Management Services Agreement." Reply 1 at 6.

Erwin Associates further argues that the Arbitration Agreement is not unconscionable. See Reply 1 at 9. It argues that "the United States District Court for the District of New Mexico has held that a nursing home admission agreement is not procedurally unconscionable just because it contains an arbitration provision." Reply 1 at 10 (citing THI of New Mexico at Hobbs Ctr., LLC v. Spradlin, 893 F. Supp. 2d 1172, 1185-86 (D.N.M. 2012)(Vazquez, J.)("Spradlin")). Regarding substantive unconscionability, Erwin Associates asserts that

> [t]he Court in <u>Spradlin</u> also held that an arbitration agreement in a nursing home admission contract was not substantively unconscionable because the arbitration provision divested the nursing home of its right to have its claims decided in a court in the same manner as it divested the resident's interest.

Reply 1 at 11 (citing <u>Spradlin</u>, 893 F. Supp. 2d at 1186). JEA contends that the Arbitration Agreement here is similar to the one in <u>Spradlin</u>. <u>See</u> Reply 1 at 11.

### 4. <u>Zangara's Motion.</u>

Zangara moves to dismiss Erwin Associates' Motion. <u>See</u> Zangara's Motion at 1. Zangara re-alleges that JEA is not a real party in interest to, nor an intended third-party beneficiary of, the Arbitration Agreement. <u>See</u> Zangara's Motion at 7-8. He adds that the Arbitration Agreement never mentions Erwin Associates, and that the only party to the agreement -- other than L. Asher -- is Albuquerque Care. <u>See</u> Zangara's Motion at 9.

Zangara next re-asserts that the Arbitration Agreement is both substantively and procedurally unconscionable. <u>See</u> Zangara's Motion at 13-14. Regarding substantive unconscionability, he contends that "the Agreement requires arbitration of the vast majority of claims that would be brought by the patient, who is the weaker party, while excluding those disputes that would exclusively be pursued by the nursing home." Zangara's Motion at 14. Zangara then re-asserts his procedural unconscionability arguments. <u>See</u> Zangara's Motion at 14-16.

Finally, Zangara argues that the Court lacks subject-matter jurisdiction over this case. <u>See</u> Zangara's Motion at 16. He contends that Erwin Associates "fails to meet its burden of proving the diverse citizenship of *each real party in interest*." Zangara's Motion at 17 (emphasis in original). Specifically, he alleges that "[t]he only named parties to the Agreement for which Lucille Asher or her representatives could have intended the Agreement to benefit are ABQ Care, LL[C], North Ridge, or ABQ Care, LL[C] doing business as North Ridge." Zangara's

Motion at 17.  Zangara concludes that because all of these entities are New Mexico citizens, the Court has no diversity jurisdiction.  See Zangara's Motion at 17.

     5.     **Erwin Associates' Response.**

Erwin Associates responds to Zangara's Motion.  See Plaintiff's Response to Defendant's Motion to Dismiss, filed February 22, 2016 (Doc. 19)("Response 2").  Erwin Associates begins by arguing that the Court has subject-matter jurisdiction over the case.  See Response 2 at 3. Erwin Associates alleges that "Ms. Asher and the personal representative of her estate, were at all relevant times New Mexico residents, [and] JEA is a Washington corporation with its principal place of business in Vancouver, Washington."  Response 2 at 3.  Erwin Associates thus concludes that the Court has diversity jurisdiction.  See Response 2 at 3.

Erwin Associates next argues that it is the real party in interest to this case.  See Response 2 at 4.  Erwin Associates re-alleges that Zangara sued Erwin Associates in state court, but now, to avoid arbitration, Zangara asserts that Erwin Associates is not a real party in interest.  See Response 2 at 4.  Erwin Associates further contends that it may enforce the Arbitration Agreement, because it is a third-party beneficiary of the Arbitration Agreement, re-alleging that the Arbitration Agreement binds Albuquerque Care's "representatives," "administrators," and "assigns."  Response 2 at 8.  Erwin Associates contends that it is a representative, administrator, and assign of Albuquerque Care pursuant to its Management Agreement with Albuquerque Care. See Response 2 at 8.

Erwin Associates again argues that the Arbitration Agreement is not unconscionable.  See Response 2 at 15.  Erwin Associates re-asserts its argument that Spradlin held that "a nursing home admission agreement is not procedurally unconscionable just because it contains an arbitration agreement."  Response 2 at 16 (citing Spradlin, 893 F. Supp. 2d at 1185-86).  Erwin

Associates also re-alleges its arguments regarding substantive unconscionability.  See Response 2 at 17.  Erwin Associates concludes that the Court should deny Zangara's Motion.  See Response 2 at 18.

**6.    Zangara's Reply.**

Zangara replies to Erwin Associates' Response.  See Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss, filed March 14, 2016 (Doc. 21)("Reply 2").  First, Zangara contends that "the fact that [he] sued JEA in state court has no bearing on JEA's status as a real party in interest."  Reply 2 at 3.  Zangara asserts that "JEA has the burden of pleading facts sufficient to establish that JEA is an *intended* third-party beneficiary of the Agreement," and that Erwin Associates has not done so.  Reply 2 at 4 (emphasis in original).  Zangara continues that "JEA focuses its argument . . . on the undisputed fact that Lucille Asher was an intended third-party beneficiary of the Agreement" and that "JEA seems to equate itself to Lucille Asher as an intended third-party beneficiary of the Agreement."  Reply 2 at 4.

Zangara then re-alleges his arguments regarding lack of subject-matter jurisdiction and procedural unconscionability before asserting that "Murphree had neither actual nor implied authority to bind Lucille Asher to an agreement regarding medical decisions or where Lucille Asher would reside."  Reply 2 at 9.  He notes that the Guardianship Order says that W. Asher, not Murphree CPAs, has "'final and ultimate authority to make all medical decisions . . . including, but not limited to, making decisions regarding where [L. Asher] should reside.'"  Reply 2 at 9 (quoting Guardianship Order at 4).  Zangara then re-alleges his substantive unconscionability arguments.  See Reply 2 at 10-11.  Zangara concludes that the Court should grant the Defendant's Motion.  See Reply 2 at 12.

7.      **The Hearing.**

The Court held a hearing on March 29, 2016.  <u>See</u> Draft Transcript of Motion Proceeding (taken March 29, 2016)("Tr.").[3]  Erwin Associates began by announcing that the state district court had stayed the state proceeding, and that Erwin Associates was no longer asking the Court to stay the state proceedings.  <u>See</u> Tr. at 5:21-25 (Hernandez).  Erwin Associates then argued that it could enforce the Arbitration Agreement, asserting that the Arbitration Agreement binds the signers' "administrators" and "assigns," and that Erwin Associates is an administrator and an assign of Albuquerque Care.  Tr. at 8:7-18 (Hernandez).

Regarding procedural unconscionability, Erwin Associates argued that unconscionability is an affirmative defense, and that Zangara had not met his burden to establish such a defense. <u>See</u> Tr. at 15:2-6 (Hernandez).  Turning to substantive unconscionability, Erwin Associates argued that "the Tenth Circuit addressed an arbitration agreement and exclusions regarding guardianship, collection, and eviction claims and specifically stated that under the FAA, you cannot treat arbitration agreements as inferior to litigation." Tr. at 15:23-16:3 (Hernandez).

Zangara began his argument.  <u>See</u> Tr. at 16:19 (Wood).  He requested that, "if the Court is . . . not inclined to decide the issue of the motion to compel arbitration as a matter of unconscionability, specifically as it pertains to procedural unconscionability, we'd request an evidentiary hearing on that matter initially."  Tr. at 16:22-17:2 (Wood).  The Court then asked if a New Mexico case existed in which a court found procedural unconscionability, but not substantive unconscionability.  <u>See</u> Tr. at 20:8-13 (Court).  Zangara responded that he had not seen such a case.  <u>See</u> Tr. at 20:14 (Wood).  Zangara added, however, that the cases "do establish

---

[3]The Court's citations to the hearing's transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

that you can have both or one.  It doesn't require both.  And then the case law is clear on that because it's been decided as a matter of substantive unconscionability on [more than] one occasion."  Tr. at 21:16-19 (Wood).  Zangara added that "the FAA has explicitly allowed state law to govern the matter of whether or not a contract was formed under the equitable principle of unconscionability . . . so New Mexico case law on matters of unconscionability is the controlling law on this issue."  Tr. at 25:2-11 (Wood).

Zangara continued that the Arbitration Agreement

is signed by the conservator who as an initial matter  really doesn't even have the authority to bind Lucille Asher to decisions regarding where she lives . . . but when we get to the procedural unconscionability issue, I think it's significant that William Asher was known to exist . . . [and] was given two exhibits to sign . . . but was never given the [Arbitration Agreement].

Tr. at 33:8-34:1 (Wood).

Erwin Associates responded to some of Zangara's arguments.  Regarding the request for an evidentiary hearing, Zangara contended that the "defendant is in control of the evidence that would be relevant here . . . .  I don't see why we need an evidentiary hearing for defense counsel to get evidence from his own client with respect to any procedural unconscionability."  Tr. at 41:13-24 (Hernandez).  Erwin Associates also expressly stated that it withdraws its request for this Court to stay the state court proceedings.  See Tr. at 47:22-23 (Hernandez).

The Court concluded the hearing by saying "the substantive/procedural unconscionability, my initial reaction is those are not going to prevent a granting of the Plaintiff's motion."  Tr. at 51:3-5 (Court).  The Court added: "I also think that I have jurisdiction, at least over the limited case that I have."  Tr. at 51:5-7 (Court).  The Court also noted: "I guess the thing I'm most concerned about is the fact that the agreement is with Albuquerque [Care] and the party that's . . . trying to enforce this arbitration agreement is not a signatory to that

agreement." Tr. at 51:11-15 (Court).

## LAW REGARDING DIVERSITY JURISDICTION AND ARBITRATION

"Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties; and (ii) that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"  Thompson v. Intel Corp., No. CIV 12-0620, 2012 WL 3860748, at *12 (D.N.M. Aug. 27, 2012)(Browning, J.)(citing 28 U.S.C. § 1332(a)).   As the Court has previously explained, "[t]he Supreme Court of the United States has described this statutory diversity requirement as 'complete diversity,' and it is present only when no party on one side of a dispute shares citizenship with any party on the other side of a dispute." McEntire v. Kmart Corp., No. CIV 09-0567, 2010 WL 553443, at *3 (D.N.M. Feb. 9, 2010) (Browning, J.)(citing Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806), overruled in part by Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908); McPhail v. Deere & Co., 529 F.3d 947, 951 (10th Cir. 2008)).   The amount-in-controversy requirement is an "estimate of the amount that will be put at issue in the course of the litigation." Valdez v. Metro. Prop. & Cas. Ins. Co., No. CIV 11-0507, 2012 WL 1132374, at *15 (D.N.M. March 19, 2012)(Browning, J.)(citing McPhail v. Deere & Co., 529 F.3d at 956).   See De La Rosa v. Reliable, Inc., 113 F. Supp. 3d 1135, 1150 (D.N.M. 2015)(Browning, J.); Ullman v. Safeway Ins. Co., 995 F. Supp. 2d 1196, 1213-14 (D.N.M. 2013)(Browning, J.).   The Court will discuss the two requirements in turn.

### 1.     Diversity of Citizenship.

For diversity jurisdiction purposes, a person's domicile determines citizenship.   See Crowley v. Glaze, 710 F.2d 676, 678 (10th Cir. 1983).  "A person's domicile is defined as the place in which the party has a residence in fact and an intent to remain indefinitely, as of the time

of the filing of the lawsuit." McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing Crowley v. Glaze, 710 F.2d at 678). See Freeport-McMoRan, Inc. v. KN Energy, Inc., 498 U.S. 426, 428 (1991)("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."). If neither a person's residence nor the location where the person has an intent to remain can be established, the person's domicile is that of his or her parents at the time of the person's birth. See Gates v. Comm'r of Internal Revenue, 199 F.2d 291, 294 (10th Cir. 1952)("[T]he law assigns to every child at its birth a domicile of origin. The domicile of origin which the law attributes to an individual is the domicile of his parents. It continues until another domicile is lawfully acquired."). Additionally, "while residence and citizenship are not the same, a person's place of residence is prima facie evidence of his or her citizenship." McEntire v. Kmart Corp., 2010 WL 553443, at *3 (citing State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994)). A corporation, on the other hand, is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Gadlin v. Sybron Int'l Corp., 222 F.3d 797, 799 (10th Cir. 2000)(quoting 28 U.S.C. § 1332(c)(1)). See De La Rosa v. Reliable, Inc., 113 F. Supp. 3d at 1151; Ullman v. Safeway Ins. Co., 995 F. Supp. 2d at 1214.

        **2.**       **Amount in Controversy.**

The statutory amount-in-controversy requirement, which presently stands at $75,000.00, must be satisfied as between a single plaintiff and a single defendant for a federal district court to have original jurisdiction over the dispute; "a plaintiff cannot aggregate independent claims against multiple defendants to satisfy the amount-in-controversy requirement," nor can multiple plaintiffs aggregate their claims against a single defendant to exceed the threshold. Martinez v. Martinez, No. CIV 09-0281, 2010 WL 1608884, at *18 (D.N.M. March 30, 2010)(Browning, J.).

If multiple defendants are jointly liable, or jointly and severally liable, on some of the claims, however, the amounts of those claims may be aggregated to satisfy the amount-in-controversy requirement as to all defendants jointly liable for the claims. See Alberty v. W. Sur. Co., 249 F.2d 537, 538 (10th Cir. 1957); Martinez v. Martinez, 2010 WL 1608884, at *18. Similarly, multiple plaintiffs may aggregate the amounts of their claims against a single defendant if the claims are not "separate and distinct." Martin v. Franklin Capital Corp., 251 F.3d 1284, 1292 (10th Cir. 2001)(Seymour, C.J.), abrogated on other grounds by Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547, 554 (2014). Multiple claims by the same plaintiff against the same defendant may be aggregated, even if the claims are entirely unrelated. See 14AA Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Vikram D. Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman, & Catherine T. Struve, Federal Practice and Procedure, Jurisdiction § 3704, at 566-95 (4th ed. 2011). While the rules on aggregation sound complicated, they are not in practice: if a single plaintiff -- regardless whether he or she is the only plaintiff who will share in the recovery -- can recover over $75,000.00 from a single defendant -- regardless whether the defendant has jointly liable co-defendants -- then the court has original jurisdiction over the dispute between that plaintiff and that defendant. The court can then exercise supplemental jurisdiction over other claims and parties that "form part of the same case or controversy under Article III," 28 U.S.C. § 1367(a), meaning that they "derive from a common nucleus or operative fact," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

Satisfaction of the amount-in-controversy requirement must be established by a preponderance of the evidence. See McPhail v. Deere & Co., 529 F.3d at 953. In the context of establishing an amount-in-controversy, the defendant seeking removal could appear to be bound

by the plaintiff's chosen amount of damages in the complaint, which would seem to allow a plaintiff to avoid federal jurisdiction "merely by declining to allege the jurisdictional amount [in controversy]." McPhail v. Deere & Co., 529 F.3d at 955.  The United States Court of Appeals for the Tenth Circuit's decision in McPhail v. Deere & Co. has foreclosed such an option from a plaintiff who wishes to remain in state court.  McPhail v. Deere & Co. holds that a defendant's burden in establishing jurisdictional facts is met if the defendant proves "jurisdictional facts that make it possible that $75,000 is in play."  529 F.3d at 955.

The Supreme Court recently clarified that a defendant seeking removal to federal court need only include in the notice of removal a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  See Dart Cherokee Basin Operating Co. v. Owen, 135 S. Ct. at 554.  The district court should consider outside evidence, and find by a preponderance of the evidence whether the amount in controversy is satisfied "only when the plaintiff contests, or the court questions, the defendant's allegation."  Dart Cherokee Basin Operating Co. v. Owen, 135 S. Ct. at 554.  See De La Rosa v. Reliable, Inc., 113 F. Supp. 3d at 1152.

**3.      Diversity of Citizenship in Motions to Compel Arbitration.**

In the context of FAA motions to compel arbitration, parties often invoke a federal court's diversity jurisdiction, because the FAA does not by itself create federal question jurisdiction.  "[T]he Act does nothing, being 'something of an anomaly in the field of federal-court jurisdiction' in bestowing no federal jurisdiction but rather requiring an independent jurisdictional basis."  Hall Street Associates, L.L.C. v. Mattel, Inc., 552 U.S. 576, 581-82 (2008)(quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983)).

A common issue in the arbitration context is the situation in which not all of the parties to

a state court action are present in a federal court action to compel arbitration of the state lawsuit. Such a situation implicates the Court's diversity jurisdiction. Although the Supreme Court and the Tenth Circuit have not ruled on whether a federal court should "look through" to the state court complaint to determine diversity jurisdiction in an FAA motion to compel arbitration, the Court concludes that that it should not "look through" to the state court complaint, but rather, should look only at the diversity of the parties before the federal court.

The Supreme Court has held that "a federal court may 'look through' an [FAA motion to compel arbitration] to determine whether it is predicated on an action that 'arises under' federal law." Vaden v. Discover Bank, 556 U.S. 49, 62 (2009)("Vaden"). Importantly, this ruling applies only to federal question jurisdiction, and not diversity. See Vaden, 556 U.S. at 62. Although the Tenth Circuit has not ruled on this issue, the United States Court of Appeals for the Eighth Circuit has held that "diversity of citizenship is determined in these cases by the citizenship of the parties named in the proceedings before the district court, plus any indispensable parties who must be joined pursuant to Rule 19." Northport Health Serv's of Arkansas LLC v. Rutherford, 605 F.3d 483, 491 (8th Cir. 2010)("Rutherford"). In Rutherford, the Eighth Circuit noted that "the pre-*Vaden* circuit decisions were unanimous in looking only to the citizenship of the parties to the federal action." 605 F.3d at 489. The court explained that Vaden did not change the rule of refusing to "look through" to all of the underlying state action's parties because such a procedure

> ignores the underlying facts and the Supreme Court's decision in *Moses H. Cone.* In that case, the Supreme Court stated that the independent basis of federal jurisdiction was diversity of citizenship. But it did not discuss that threshold issue, despite noting the presence of a non-diverse party who made the parallel state court action non-removable. 460 U.S. at 7 & n. 4
>
>  . . . .

> Even if no party challenged diversity jurisdiction, that the Supreme Court did not even discuss the issue is telling because in other cases it has noted that federal courts are obligated to consider lack of subject matter jurisdiction *sua sponte.*

Rutherford, 605 F.3d at 489-90 (footnote and internal citations omitted). Indeed, "[t]he Supreme Court 'does not normally overturn, or so dramatically limit, earlier authority *sub silentio.*'" Rutherford, 605 F.3d at 490 (quoting Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 18 (2000)). The Court thus concludes that in a situation where not all of the parties to a state court action are present in a federal court FAA action to compel arbitration of the state lawsuit, "diversity of citizenship is determined in these cases by the citizenship of the parties named in the proceedings before the district court, plus any indispensable parties who must be joined pursuant to Rule 19." Rutherford, 605 F.3d at 491. In other words, the Court will not "look through" to the state court action in diversity cases.

The Court also notes that multiple judges within the District of New Mexico have ruled that a court should not "look through" to the parties in the state court action in a diversity case. "The Eighth Circuit held that non-diverse nursing home administrators who were named as defendants in the underlying state tort action were not necessary and indispensable parties in the nursing home's federal court action to compel arbitration, and thus their citizenship did not destroy diversity jurisdiction." THI of New Mexico at Hobbs Ctr, LLC v. Patton, 851 F. Supp. 2d 1281, 1286 (D.N.M. 2011)(Hansen, Senior J.)("THI")(citing Rutherford, 605 F.3d at 491). The Honorable LeRoy Hansen, Senior United States District Judge for the District of New Mexico, followed the Eighth Circuit's ruling, which "determined that *Vaden* did not implicitly overrule the pre-*Vaden* circuit decisions that were unanimous in looking only to the citizenship of the named parties in the federal action." THI, 851 F. Supp. 2d at 1287 (citing Rutherford, 605 F.3d at 489). See THI of New Mexico at Vida Encantada, LLC v. Lovato, 848 F. Supp. 2d 1309,

1317 (D.N.M 2012)(Vazquez, J.)("*Vaden* . . . is inapplicable here, where jurisdiction is founded on diversity of citizenship between the parties, rather than on the presence of a federal question."); Life Care Centers of America, Inc. v. Estate of Blair by and through Rhoden, No. CIV 17-0249, 2017 WL 3432209, at **5, 7 (D.N.M. 2017)(Molzen, M.J.)(noting that "the Eighth Circuit has explicitly rejected th[e] proposition" that "federal jurisdiction over a diversity-based . . . petition to compel arbitration is simply unavailable when a 'look through' to the underlying controversy implicates non-diverse state court defendants," and holding the same).

### 4.      Amount in Controversy in Motions to Compel Arbitration.

Unlike determining the citizenship of the parties, a court may "look through" to a possible arbitration award when evaluating the amount in controversy.  The Tenth Circuit has held that "[t]his court . . . finds persuasive the holding of other circuits that 'look through to the possible award resulting from the desired arbitration' to determine the amount in controversy." Woodmen of the World Life Ins. Society v. Manganaro, 342 F.3d 1213, 1217 (10th Cir. 2003)(quoting Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157, 160 (2d Cir. 1998)). "Accordingly, the requisite jurisdictional amount will be satisfied in a suit to compel arbitration unless it is legally certain that the stakes of the arbitration are $75,000 or less." Woodmen of the World Life Ins. Society v. Manganaro, 342 F.3d at 1217.  See THI of New Mexico at Las Cruces, LLC v. Fox, 727 F. Supp. 2d 1195, 1211 n.6 (D.N.M. 2010)(Browning, J.).

### RELEVANT LAW REGARDING ARBITRATION AGREEMENTS

"The FAA reflects the fundamental principle that arbitration is a matter of contract." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010)("Rent-A-Center").  "[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate." Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 270 (1995).  "The FAA

thereby places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." Rent-A-Center, 561 U.S. at 67-68.

Under § 4 of the FAA, a party "aggrieved" by another party's failure "to arbitrate under a written agreement for arbitration" may petition a federal court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If a party is aggrieved by the refusal of another to arbitrate under a written agreement, the district court, upon petition, "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Section 2, the "primary substantive provision of the Act," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24, provides: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." Rent-A-Center, 561 U.S. at 71. "[T]he basis of challenge [must] be directed specifically to the agreement to arbitrate before the court will intervene." Rent-A-Center, 561 U.S. at 71.

1.    **Public Policy Favoring Enforcement of an Arbitration Agreement.**

"There is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration." Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1488-89 (10th Cir. 1994). See Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)("Congress declared a national policy favoring arbitration."); Hill v. Ricoh Americas

Corp., 603 F.3d 766, 771 (10th Cir. 2010)("[T]he FAA is a 'congressional declaration of a liberal federal policy favoring arbitration agreements.'" (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983))). Congress enacted the FAA with the express purpose of granting arbitration agreements the same enforceability as any other contract provision. See Volt Info. Sciences, Inc. v. Bd. of Trs., 489 U.S. 468, 474 (1989)(stating that Congress designed the FAA to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and place such agreements upon the same footing as other contracts"). When arbitration's applicability is in dispute, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)(quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24-25).

### 2.   Existence of a Valid Arbitration Agreement.

The Supreme Court has noted that "[a]rbitration is simply a matter of contract between parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995)(internal citations omitted). Courts must interpret arbitration clauses liberally, and all doubts must be resolved in favor of arbitration. See Hicks v. Cadle Co., 355 F. App'x 186, 192 (10th Cir. 2009)("We resolve any doubts in favor of arbitrability.")(unpublished)[4](citing Litton

_____

[4]Hicks v. Cadle Co. is an unpublished opinion, but the Court can rely on an unpublished opinion from the Tenth Circuit to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value

- 21 -

Fin. Printing Div. v. NLRB, 501 U.S. 190, 209 (1991)); Armijo v. Prudential Ins. Co., 72 F.3d 793, 797-98 (10th Cir. 1995)(stating that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration" and that "arbitration clauses must be interpreted liberally, and any doubts should be resolved in favor of arbitration," and holding that the plaintiffs had "failed to rebut the presumption of arbitrability").

While "the presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement, . . . this presumption disappears when the parties dispute the existence of a valid arbitration agreement." Dumais v. Am. Golf Corp., 299 F.3d 1216, 1220 (10th Cir. 2002). See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998)("When the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away."). In the Tenth Circuit, and in New Mexico courts, the "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." Avedon Eng'g Inc. v. Seatex, 126 F.3d 1279, 1287 (10th Cir. 1997). See K.L. House Constr. Co. v. City of Albuquerque, 1978-NMSC-025, ¶ 8, 576 P.2d 752, 754 ("[T]he courts only decide the threshold question of whether there is an agreement to arbitrate. If so, the court should order arbitration."). "Like other contracts . . . [arbitration agreements] may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Rent-A-Center, 561 U.S. at 68 (quoting Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). See Cornoyer v. AT&T Mobility

with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court concludes that Hicks v. Cadle Co. and Fundamental Administrative Services, LLC v. Patton, 504 F. App'x 694 (10th Cir. 2012)(unpublished), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion.

Servs., LLC, No. CIV 15-0474, 2016 WL 6404853, at *8-11 (D.N.M. 2016)(Browning, J.). Cf.
K.L. House Construction Co. v. City of Albuquerque, 1978-NMSC-025, ¶ 8, 576 P.2d at 754
(holding that, because a valid arbitration clause existed, the parties had to arbitrate all disputes
when the "subject matter of the dispute has a reasonable relationship to the subject matter of the
contract"). See La Frontera Ctr., Inc. v. United Behavioral Health, Inc., 2017 WL 3172723, at
*18; Evangelical Lutheran Good Samaritan Soc'y v. Moreno, No. CIV 16-1355, 2017 WL
4354703, at *14 (D.N.M. 2017)(Browning, J.); Parrish v. Valero Retail Holdings, Inc., 727 F.
Supp. 2d 1266, 1273 (D.N.M. 2010)(Browning, J.).

## LAW REGARDING DIVERSITY JURISDICTION AND CHOICE OF LAW

When a court's jurisdiction rests on diversity of citizenship under 28 U.S.C. § 1332, the
court should look to the forum state's choice-of-law rules to determine which state's substantive
law to apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Pepsi-
Cola Bottling Co. v. PepsiCo., Inc., 431 F.3d 1241, 1255 (10th Cir. 2005). In New Mexico,
choice-of-law analysis is a two-step process. See Mosely v. Titus, 762 F. Supp. 2d 1298, 1314
(D.N.M. 2010)(Browning, J.)(citing Terrazas v. Garland & Loman, Inc., 2006-NMCA-111, ¶ 14,
142 P.3d 374, 377). "First, the Court must characterize the 'area of substantive law -- e.g., torts,
contracts, domestic relations -- to which the law of the forum assigns a particular claim or
issue.'" Mosely v. Titus, 762 F. Supp. 2d at 1314 (quoting Terrazas v. Garland & Loman, Inc.,
2006-NMCA-111, ¶ 11, 142 P.3d at 377). The next step is to apply New Mexico's choice-of-
law rule. See Mosely v. Titus, 762 F. Supp. 2d at 1314 (citing Terrazas v. Garland & Loman,
Inc., 2006-NMCA-111, ¶ 15, 142 P.3d at 377).

"In tort actions, New Mexico courts follow the doctrine of lex loci delicti commissi and
apply the law of the place where the wrong took place." Mosely v. Titus, 762 F. Supp. 2d at

1314 (citing <u>Torres v. State</u>, 1995-NMSC-025, ¶ 13, 894 P.2d 386, 390).  The place of the wrong is the location of the last act necessary to complete the injury.  <u>See</u> <u>Mosely v. Titus</u>, 762 F. Supp. 2d at 1314 (citing <u>Torres v. State</u>, 1995-NMSC-025, ¶ 13, 894 P.2d at 390).  "Where the elements of the underlying claim include harm, the place of the wrong is the place where the harm occurred."  <u>Mosely v. Titus</u>, 762 F. Supp. 2d at 1314 (citing <u>First Nat'l Bank v. Benson</u>, 1976-NMCA-072, ¶ 6, 553 P.2d 1288, 1289).

Under <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1983)("<u>Erie</u>"), a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court."  <u>Butt v. Bank of Am., N.A.</u>, 477 F.3d 1171, 1179 (10th Cir. 2007).  <u>Accord</u> <u>Mem. Hosp. v. Healthcare Realty Trust Inc.</u>, 509 F.3d 1225, 1229 (10th Cir. 2007).  The Court has held that if a district court exercising diversity jurisdiction cannot find a Supreme Court of New Mexico "opinion that [governs] a particular area of substantive law . . . [the district court] must . . . predict how the Supreme Court of New Mexico would [rule]."  <u>Guidance Endodontics, LLC v. Dentsply Intern., Inc.</u>, 708 F. Supp. 2d 1209, 1224-25 (D.N.M. 2010)(Browning, J.).  "Just as a court engaging in statutory interpretation must always begin with the statute's text, a court formulating an <u>Erie</u> prediction should look first to the words of the state supreme court."  <u>Peña v. Greffet</u>, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015)(Browning, J.).  If the Court finds only an opinion from the Court of Appeals of New Mexico, while "certainly [the Court] may and will consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision."  <u>Mosley v. Titus</u>, 762 F. Supp. 2d at 1332 (noting that, where the only opinion on point is "from the Court of Appeals, [] the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would

do if the case were presented to it")(citing <u>Wade v. EMCASCO Ins. Co.</u>, 483 F.3d 657, 666

(10th Cir. 2007)(explaining that, "[w]here no controlling state decision exists, the federal court

must attempt to predict what the state's highest court would do," and that, "[i]n doing so, it may

seek guidance from decisions rendered by lower courts in the relevant state")).[5]

---

[5]The Supreme Court has addressed what the federal courts may use when there is not a decision on point from the state's highest court:

> The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State. An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question. We have declared that principle in *West v. American Telephone and Telegraph Co.*, 311 U.S. 223 (1940), decided this day. It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law.
>
> . . . .
>
> We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court, and we think that the decisions of the Court of Chancery [the New Jersey trial court] are entitled to like respect as announcing the law of the State.
>
> . . . .
>
> The question has practical aspects of great importance in the proper administration of justice in the federal courts. It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship. In the absence of any contrary showing, the rule [set forth by two New Jersey trial courts, but no appellate courts] appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit

## NEW MEXICO LAW REGARDING GUARDIAN AND CONSERVATOR POWERS

Under New Mexico law, there are two broad categories of people whom a court may appoint to care for an incapacitated person, guardians and conservators.  A guardian is "a person who has qualified to provide for the care, custody or control of the person of a minor or incapacitated person pursuant to parental or court appointment."  N.M. Stat. Ann. § 45-1-201(A)(21).  A conservator is "a person who is appointed by a court to manage the property or financial affairs or both of a protected person."  N.M. Stat. Ann. § 45-5-101(A).  Guardians and conservators have different enumerated powers that they may exercise to provide care for an incapacitated person.  See N.M. Stat. Ann. § 45-5-312 (enumerating the powers of a guardian); N.M. Stat. Ann. § 45-5-424 (enumerating the powers of a conservator).  Among the powers given to a conservator are the abilities to "pay or contest any claim; to settle a claim by or against the estate or the protected person by compromise, arbitration or otherwise."  N.M. Stat. Ann. § 45-5-424(C)(19).  A conservator is also empowered to "execute and deliver all instruments which will accomplish or facilitate the exercise of the powers vested in the conservator."  N.M. Stat. Ann. § 45-5-424(C)(25).

A guardian "is entitled to custody of the incapacitated person and may establish the incapacitated person's place of abode within or without New Mexico."  N.M. Stat. Ann. § 45-5-312(B)(1).  Further, "[a] guardian of an incapacitated person for whom a conservator also has

---

Court of Appeals.

Fid. Union Trust Co. v. Field, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted). The Supreme Court has softened this position over the years; federal courts are no longer bound by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point."  Comm'r v. Estate of Bosch, 387 U.S. at 465 (citing King v. Order of United Commercial Travelers, 333 U.S. 153, 159 (1948)).

been appointed shall control the care and custody of the incapacitated person . . . . The guardian may request the conservator to expend the incapacitated person's estate by payment to third persons or institutions for the incapacitated person's care and maintenance." N.M. Stat. Ann. § 45-5-312(C).

The Court concludes that a conservator has the power to enter into arbitration agreements on an incapacitated person's behalf to facilitate the conservator's enumerated powers. A conservator, and not a guardian, has the power to "contest any claim; to settle a claim by or against the estate or the protected person by . . . arbitration or otherwise," N.M. Stat. Ann. § 45-5-424(C)(19), and to "execute and deliver all instruments which will accomplish or facilitate the exercise of the powers vested in the conservator." N.M. Stat. Ann. § 45-5-424(C)(25). The word "facilitate" is important. In facilitating the exercise of his or her enumerated powers to contest or settle a claim against the incapacitated person, the conservator may decide that, should any claims arise against the incapacitated person, the incapacitated person may prefer the speed and privacy of arbitration. Indeed, many people do not want their financial or health information to become public record via litigation. Thus, a conservator may choose to sign arbitration agreements to "facilitate" his or her ability to "contest any claim" that may arise against the incapacitated person. The Court therefore concludes that a conservator has the power to enter into an arbitration agreement to "facilitate" his or her enumerated conservator powers.

An arbitration agreement also survives an incapacitated person's death for the purposes of a wrongful death action. In Estate of Krahmer, ex rel. Peck v. Laurel Healthcare Providers, LLC, 2014-NMCA-001, ¶ 1, 315 P.3d 298, 299 ("Krahmer"),[6] the "Plaintiff filed a wrongful

_____

[6]In this diversity case, the Court must look to how the Supreme Court of New Mexico, rather than the Court of Appeals of New Mexico, would resolve the case. See C.I.R. v. Bosch's

death action against the nursing home, which responded with a motion to compel arbitration, pursuant to an agreement signed when [the decedent] entered the nursing home." Krahmer, 2014-NMCA-001, ¶ 1, 315 P.3d at 299. The Court of Appeals of New Mexico held that, "because a wrongful death action is entirely derivative of the decedent's right to sue, a valid arbitration agreement signed by a competent party binds that party's estate and statutory heirs in a subsequent wrongful death action." Krahmer, 2014-NMCA-001, ¶ 1, 315 P.3d at 299. In short, an arbitration agreement survives death for the purposes of a wrongful death action.

## LAW REGARDING THIRD-PARTY BENEFICIARIES

As a general rule, "one who is not a party to a contract cannot maintain suit upon it." Fleet Mortgage Corp. v. Schuster, 1991-NMSC-046, ¶ 4, 811 P.2d 81, 82. Despite this general rule, a third party may be a beneficiary of a contract, and may, as a beneficiary, have enforceable rights against another party to the contract. See Fleet Mortgage Corp. v. Schuster, 1991-NMSC-046, ¶ 4, 811 P.2d at 82. "There are two classes of third-party beneficiaries: intended

---

Estate, 387 U.S. 456, 465 (1967). However, "[i]f there be no decision by [the state's highest court] then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." C.I.R. v. Bosch's Estate, 387 U.S. at 465. The Supreme Court of New Mexico has not explicitly said "whether a wrongful death representative is bound to arbitrate if the decedent was personally bound by an arbitration agreement" and has refused to answer a certified question from the United States District Court for the District of New Mexico on the matter. Krahmer, 2014-NMCA-001, ¶ 10, 315 P.3d at 301 (citing THI of New Mexico at Vida Encantada, LLC v. Archuleta, No. CIV 11-0399, 2013 WL 2387752, at *6 (D.N.M. 2013)(Hansen, Senior J.). The Supreme Court of New Mexico has held, however, -- albeit some time ago -- that, "[i]n this jurisdiction, the Legislature and the courts have expressed a strong policy preference for resolution of disputes by arbitration." Dairyland Ins. Co. v. Rose, 1979-NMSC-021, ¶ 14, 591 P.2d 281, 284. Given the Supreme Court of New Mexico's still good law that there is a "strong policy preference" for arbitration, and the Court of Appeals of New Mexico's on-point decision in Krahmer, the Court concludes that the Supreme Court of New Mexico would follow Krahmer and that this Court should follow Krahmer. This result is also most consistent with federal law, which also strongly favors enforcing arbitration agreements. See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d at 1488-89 ("There is a strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration.").

beneficiaries and incidental beneficiaries." Tarin's Inc. v. Tinley, 2000-NMCA-048, ¶ 13, 3 P.3d

680, 685-86.[7] The Supreme Court of New Mexico has explained:

> A third-party may have an enforceable right against an actual party to a contract if the third-party is a beneficiary of the contract. A third-party is a beneficiary if the actual parties to the contract intended to benefit the third-party. The intent to benefit the third-party must appear either from the contract itself or from some evidence that the person claiming to be a third party beneficiary is an intended beneficiary.

Callahan v. New Mexico Federation of Teachers–TVI, 2006-NMSC-010, ¶ 20, 131 P.3d 51, 58

(internal quotations omitted)(citing Fleet Mortgage Corp. v. Schuster, 1991-NMSC-046, ¶¶ 1-4,

811 P.2d at 82-83). See Great American Ins. Co. of New York v. W. States Fire Prot. Co., 730

F. Supp. 2d 1308, 1316 (D.N.M. 2009)(Browning, J.).

> Only intended beneficiaries can seek enforcement of a contract. The promisor must have had reason to know the benefit was contemplated by the promise as one of the motivating causes for entering the contract. The paramount indicator of a third party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries.

Tarin's Inc. v. Tinley, 2000-NMCA-048, ¶ 13, 3 P.3d at 686 (internal quotations and citations

omitted). "The burden is on the person claiming to be a third-party beneficiary to show that the

---

[7]In this diversity case, the Court must look to how the Supreme Court of New Mexico, rather than the Court of Appeals of New Mexico, would resolve the case. Under the Erie doctrine, federal courts sitting in diversity must apply the substantive law of the state that would otherwise have jurisdiction over the claims at issue. See Erie, 304 U.S. at 78. In the absence of an authoritative pronouncement from the highest court, a federal court's task under the Erie doctrine is to predict how the state's highest court would rule if presented with the same case. See Wade v. EMCASCO Ins. Co., 483 F.3d 657, 666 (10th Cir. 2007). The rules the Court cites from Tarin's Inc. v. Tinley all originated in Supreme Court of New Mexico cases. See Permian Basin Inv. Corp. v. Lloyd, 1957-NMSC-048, ¶¶ 20-22, 312 P.2d 533, 536-37; Valdez v. Cillessen & Son, Inc., 1987-NMSC-015, ¶ 34, 734 P.2d 1258, 1264; Jaramillo v. Providence Washington Ins. Co., 1994-NMSC-018, ¶ 17, 871 P.2d 1343, 1349. The Court therefore concludes that the Supreme Court of New Mexico would follow Tarin's Inc. v. Tinley, and that this Court should do the same.

parties to the contract intended to benefit him." <u>Fundamental Administrative Services, LLC v. Patton</u>, 504 F. App'x 694, 698 (10th Cir. 2012)(unpublished)(quoting <u>Tarin's, Inc. v. Tinley</u>, 2000-NMCA-048, ¶ 13, 3 P.3d at 686).

## LAW REGARDING NEW MEXICO'S UNCONSCIONABILITY DEFENSE TO CONTRACT ENFORCEMENT

In New Mexico, "unconscionability is an affirmative defense to contract enforcement." <u>Strausberg v. Laurel Healthcare Providers, LLC</u>, 2013-NMSC-032, ¶ 3, 304 P.3d 409, 412. Consequently, "[c]ourts may render a contract or portions of a contract unenforceable under the equitable doctrine of unconscionability when the terms are 'unreasonably favorable to one party while precluding a meaningful choice of the other party.'" <u>Dalton v. Santander Consumer USA, Inc.</u>, 2016-NMSC-035, ¶ 6, 385 P.3d 619, 621 (alteration added)(quoting <u>Cordova v. World Fin. Corp. of N.M.</u>, 2009-NMSC-021, ¶ 21, 208 P.3d 901, 907). The party asserting an unconscionability defense "bears the burden of proving that a contract or a portion of a contract should be voided as unconscionable." <u>Dalton v. Santander Consumer USA, Inc.</u>, 2016-NMSC-035, ¶ 7, 385 P.3d at 621 (citing <u>Strausberg v. Laurel Healthcare Providers, LLC</u>, 2013-NMSC-032, ¶¶ 24, 39, 48, 304 P.3d at 415). "The burden of proving unconscionability refers only to 'the burden of persuasion, i.e., the burden to persuade the factfinder' and not 'the burden of production, i.e., the burden to produce evidence.'" <u>Dalton v. Santander Consumer USA, Inc.</u>, 2016-NMSC-035, ¶ 7, 385 P.3d at 621 (quoting <u>Strausberg v. Laurel Healthcare Providers, LLC</u>, 2013-NMSC-032, ¶ 24, 304 P.3d at 415).

"A contract can be procedurally or substantively unconscionable." <u>Dalton v. Santander Consumer USA, Inc.</u>, 2016-NMSC-035, ¶ 7, 385 P.3d at 621 (citing <u>Cordova v. World Fin. Corp. of N.M.</u>, 2009-NMSC-021, ¶ 21, 208 P.3d at 907). <u>See Fiser v. Dell Computer Corp.</u>, 2008-NMSC-046, ¶ 20, 188 P.3d 1215, 1221 ("The classic articulation of unconscionability is

that it is comprised of two prongs: substantive unconscionability and procedural unconscionability.")(citing 7 Joseph M. Perillo, Corbin on Contracts § 29.4, at 388 (2002 ed.)). "Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair." Fiser v. Dell Computer Corp., 2008-NMSC-046, ¶ 20, 188 P.3d at 1221 (citing Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, ¶ 14, 68 P.3d 901, 907; Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 16, 709 P.2d 675, 679, disapproved of on other grounds by Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 31, 208 P.3d at 909). "Procedural unconscionability," by contrast, "is determined by analyzing the circumstances surrounding the contract's formation, such as whether it was an adhesive contract and the relative bargaining power of the parties." Fiser v. Dell Computer Corp., 2008-NMSC-046, ¶ 20, 188 P.3d at 1221 (citing Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 16, 709 P.2d at 679).

"'The weight given to procedural and substantive considerations varies with the circumstances of each case.'" Fiser v. Dell Computer Corp., 2008-NMSC-046, ¶ 20, 188 P.3d at 1221 (quoting Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 16, 709 P.2d at 679). "While there is a greater likelihood of a contract's being invalidated for unconscionability if there is a combination of both procedural and substantive unconscionability, there is no absolute requirement in our law that both must be present to the same degree or that they both be present at all." Cordova v. World Fin. Corp. of NM, 2009-NMSC-021, ¶ 24, 208 P.3d at 908 (citing Fiser v. Dell Computer Corp., 2008-NMSC-046, ¶ 22, 188 P.3d at 1221 (invalidating an arbitration clause without a finding of procedural unconscionability where "there has been such an overwhelming showing of substantive unconscionability"); Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 16, 709 P.2d at 679; 7 Joseph M. Perillo, Corbin on Contracts § 29.1, at 377

(ed. 2002)(observing that there is "no basis in the text" of Article 2 of the Uniform Commercial Code for concluding that the defense of unconscionability cannot be invoked unless the contract or clause is both procedurally and substantively unconscionable). Moreover, "[p]rocedural and substantive unconscionability often have an inverse relationship[.] The more substantively oppressive a contract term, the less procedural unconscionability may be required for a court to conclude that the offending term is unenforceable." Cordova v. World Fin. Corp. of NM, 2009-NMSC-021, ¶ 24, 208 P.3d at 908 (alteration added)(citing Circuit City Stores, Inc. v. Mantor, 335 F.3d 1101, 1106 (9th Cir. 2003); 1 E. Allan Farnsworth, Farnsworth on Contracts § 4.28, at 585 (3d ed. 2004)("A court will weigh all elements of both substantive and procedural unconscionability and may conclude that the contract is unconscionable because of the overall imbalance.")).

1. **Procedural Unconscionability.**

"Procedural unconscionability may be found where there was inequality in the contract formation." State ex rel. King v. B & B Inv. Grp., Inc., 2014-NMSC-024, ¶ 27, 329 P.3d 658, 669 (citing Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 23, 208 P.3d at 907-08). A contract is procedurally unconscionable "only where the inequality is so gross that one party's choice is effectively non-existent." Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 18, 709 P.2d at 679. Whether a party has meaningful choice is "determined by examining the circumstances surrounding the contract formation[], including the particular party's ability to understand the terms of the contract and the relative bargaining power of the parties." Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 16, 709 P.2d at 679 (internal citations omitted). Consequently, "[a]nalyzing procedural unconscionability requires the court to look beyond the four corners of the contract and examine factors 'including the relative bargaining strength,

sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other.'" State ex rel. King v. B & B Inv. Grp., Inc., 2014-NMSC-024, ¶ 27, 329 P.3d at 669 (quoting Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 27, 208 P.3d at 907-08). See City of Raton v. Arkansas River Power Auth., 760 F. Supp. 2d 1132, 1154 (D.N.M. 2009)(Browning, J.)("In analyzing whether a contract or a term in a contract is procedurally unconscionable, New Mexico courts consider several factors, including the use of high pressure tactics, the relative scarcity of the subject matter of the contract, and the relative education, sophistication and wealth of the parties.")(citing Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 16, 709 P.2d at 679).

"When assessing procedural unconscionability, courts should consider whether the contract is one of adhesion." Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 44, 259 P.3d 803, 817. An adhesion contract is a standardized contract that a transacting party with superior bargaining strength offers to a "weaker party on a take-it-or-leave-it basis, without opportunity for bargaining." Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 44, 259 P.3d at 817 (citing Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 33, 208 P.3d at 910). "Adhesion contracts generally warrant heightened judicial scrutiny because the drafting party is in a superior bargaining position." Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 44, 259 P.3d at 817 (citing Wis. Auto Title Loans, Inc. v. Jones, 714 N.W.2d 155, 170 (Wis. 2006)). "Although not all adhesion contracts are unconscionable, an adhesion contract is procedurally unconscionable and unenforceable 'when the terms are patently unfair to the weaker party.'" Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 44, 259 P.3d at 817 (quoting Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 33, 208 P.3d at 910).

For example, in <u>State ex rel. King v. B & B Investment Group, Inc.</u>, the Supreme Court of New Mexico decided whether loan contracts offered by certain small-loan lenders were unconscionable. <u>See</u> 2014-NMSC-024, ¶ 27, 329 P.3d at 669-70. The Supreme Court of New Mexico concluded that substantial evidence supported "the finding of procedural unconscionability as understood in common law." 2014-NMSC-024, ¶ 27, 329 P.3d at 669-70 The Supreme Court of New Mexico predicated its holding that the loan contracts at issue were procedurally unconscionable on a number of facts regarding contract formation, including

> the relative bargaining strength and sophistication of the parties is unequal. Moreover, borrowers are presented with Hobson's choice: either accept the quadruple-digit interest rates, or walk away from the loan. The substantive terms are preprinted on a standard form, which is entirely nonnegotiable. The interest rates are set by drop-down menus in a computer program that precludes any modification of the offered rate. Employees are forbidden from manually overriding the computer to make fee adjustments without written permission from the companies' owners: manual overrides will be considered in violation of company policy and could result with . . . criminal charges brought against the employee and or termination.

2014-NMSC-024, ¶ 27, 329 P.3d at 669 (internal quotation marks omitted). The Supreme Court of New Mexico further concluded that, on these facts, the loan contracts at issue were contracts of adhesion, because the "contracts are prepared entirely by Defendants, who have superior bargaining power, and are offered to the weaker party on a take-it-or-leave-it basis." 2014-NMSC-024, ¶ 27, 329 P.3d at 669. The Supreme Court of New Mexico added that, "although they will not be found unconscionable in every case, an adhesion contract is procedurally unconscionable and unenforceable when the terms are patently unfair to the weaker party." 2014-NMSC-024, ¶ 27, 329 P.3d at 669 (citing <u>Rivera v. Am. Gen. Fin. Servs., Inc.</u>, 2011-NMSC-033, ¶ 44, 259 P.3d at 817).

## 2. __Substantive Unconscionability.__

Substantive unconscionability requires courts "to consider 'whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns'" to determine "'the legality and fairness of the contract terms themselves.'" Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 8, 385 P.3d at 621 (quoting Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 22, 208 P.3d at 907). Accordingly, when examining a contract for substantive unconscionability, courts must "examine the terms on the face of the contract and . . . consider the practical consequences of those terms." Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 8, 385 P.3d at 621 (citing State ex rel. King v. B & B Inv. Grp., Inc., 2014-NMSC-024, ¶ 32, 329 P.3d at 670 ("[S]ubstantive unconscionability can be found by examining the contract terms on their face.")). "Thus, the party bearing the burden of proving substantive unconscionability need not make any particular evidentiary showing and can instead persuade the factfinder that the terms of a contract are substantively unconscionable by analyzing the contract on its face." Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 8, 385 P.3d at 622.

"When its terms are unreasonably favorable to one party, a contract may be held to be substantively unconscionable." Monette v. Tinsley, 1999-NMCA-040, ¶ 19, 975 P.2d 361, 365 (citing State ex rel. State Highway Transp. Dep't v. Garley, 1991-NMSC-008, 806 P.2d 32, 39; Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 23, 709 P.2d 675, 680). The Supreme Court of New Mexico noted in Guthmann v. La Vida Llena:

> In determining reasonableness or fairness, the primary concern must be with the terms of the contract considered in light of the circumstances existing when the contract was made. The test is not simple, nor can it be mechanically applied. The terms are to be considered "in the light of the general commercial background and the commercial needs of the particular trade or case." Corbin suggests the test as

being whether the terms are "so extreme as to appear unconscionable according to the mores and business practices of the time and place."

Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 23, 709 P.2d at 680 (quoting Bowlin's, Inc. v. Ramsey Oil Co., 1983-NMCA-038, ¶ 22, 662 P.2d at 669). Further, for a court to hold that a contract is substantively unconscionable, the court must conclude that one or more of the contract's terms was grossly unfair "at the time the contract was formed." Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 24, 709 P.2d at 680.

With respect to arbitration agreements specifically, the Supreme Court of New Mexico has held that arbitration agreements are substantively unconscionable and thus unenforceable where the arbitration agreement contains a unilateral carve out that explicitly exempts from mandatory arbitration those judicial remedies that a lender is likely to need, while providing no such exemption for the borrower. See Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶¶ 51-54, 259 P.3d at 818-19; Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 32, 208 P.3d at 907-10. In Cordova v. World Finance Corporation of New Mexico, for example, the Supreme Court of New Mexico stated that "[c]ontract provisions that unreasonably benefit one party over another are substantively unconscionable." 2009-NMSC-021, ¶ 25, 208 P.3d at 908. In that case, a loan contract included a purportedly bilateral arbitration clause containing a unilateral carve-out provision that exempted the lender from mandatory arbitration when the lender sought remedies, "including[,] but not limited to, judicial foreclosure or repossession" in the event of the borrower's default. 2009-NMSC-021, ¶ 3, 208 P.3d at 904 (internal quotation marks omitted). The Supreme Court of New Mexico held that the arbitration clause was "grossly unreasonable" and against New Mexico public policy, because the agreement required the borrower to arbitrate any of the borrower's claims while reserving to the lender "the exclusive option of seeking its preferred remedies through litigation." 2009-NMSC-021, ¶ 20, 208 P.3d at

907. Accordingly, the Supreme Court of New Mexico held that the arbitration agreement was substantively unconscionable. See 2009-NMSC-021, ¶ 32, 208 P.3d at 910.

Next, in Rivera v. American General Financial Services, Inc., the Supreme Court of New Mexico confronted a similar loan contract in which an arbitration agreement required the borrower to arbitrate any claims against the lender while exempting from mandatory arbitration the lender's "self-help or judicial remedies" concerning the property securing the transaction and any claims that the lender might have "[i]n the event of a default." 2011-NMSC-033, ¶ 3, 259 P.3d at 807-08. As in Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 32, 208 P.3d at 910, in Rivera v. American General Financial Services, Inc., the Supreme Court of New Mexico again held the arbitration agreement substantively unconscionable, because the arbitration clause allowed the lender to "retain[] the right to obtain through the judicial system the only remedies it [is] likely to need," while "forcing [the borrower] to arbitrate any claim she may have." 2011-NMSC-033, ¶ 53, 259 P.3d at 818-19. Accordingly, the Supreme Court of New Mexico held that the arbitration agreement was unreasonably one-sided and, therefore, unenforceable qua substantively unconscionable. See 2011-NMSC-033, ¶ 54, 259 P.3d at 818-19.

By contrast, in Dalton v. Santander Consumer USA, Inc., the Supreme Court of New Mexico held that an arbitration agreement between a lender and a borrower that included a bilateral exception for small claims less than $10,000.00 was not substantively unconscionable, "even if one party is substantively more likely to bring small claims actions . . . ." 2016-NMSC-035, ¶ 21, 385 P.3d at 624. See id. ¶ 22, 385 P.3d at 625 ("We are hesitant to adopt a holding that might discourage bilateral small claims carve-outs, and thereby curtail the availability of small claims proceedings to New Mexico consumers . . . ."). The Supreme Court of New Mexico stated that "[g]ross unfairness is a bedrock principle of our unconscionability analysis,"

2016-NMSC-035, ¶ 21; 385 P.3d at 624, and refused to conclude that an arbitration agreement that exempts, for both parties, claims less than $10,000.00 from mandatory arbitration is either unreasonably one-sided or grossly unfair, see 2016-NMSC-035, ¶¶ 21-25; 385 P.3d at 624-25. See Thompson v. THI of New Mexico at Casa Arena Blanca, LLC, 2006 WL 4061187, at *10.

The Supreme Court has also held that state courts may not use unconscionability to subvert the purposes of the FAA. See AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 341 (2011)(Scalia, J., writing for a five-justice majority)("Concepcion"). To be sure, the FAA says that arbitration agreements may be rendered unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as . . . unconscionability, is alleged to have been applied in a fashion that disfavors arbitration." Concepcion, 563 U.S. at 341. "The FAA's preemptive effect might extend even to grounds traditionally thought to exist 'at law or in equity for the revocation of any contract.'" Concepcion, 563 U.S. at 341 (quoting 9 U.S.C. § 2). "Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives." Concepcion, 563 U.S. at 343. "A federal statute's saving clause 'cannot in reason be construed as [allowing] a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself.'" Concepcion, 563 U.S. at 343 (quoting American Telephone & Telegraph Co. v. Central Office Telephone, Inc., 524 U.S. 214, 227-28 (1998)).

The Tenth Circuit has held that the FAA "limits state-law grounds for refusing to enforce an arbitration clause." Walker v. BuildDirect.com Technologies, Inc., 733 F.3d 1001,

1004 (10th Cir. 2013). "In particular, states 'may not . . . decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause.'" Walker v. BuildDirect.com Technologies, Inc., 733 F.3d at 1005 (quoting Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. at 281). See Parrish v. Valero Retail Holdings, Inc., 727 F. Supp. 2d at 1279 ("[T]he Court believes that such hostility to arbitration in employment contracts may begin to infringe the FAA's intent to protect against judicial hostility towards arbitration."). The Court therefore must ensure that state courts are not using contract defenses such as unconscionability to destroy the FAA.

## ANALYSIS

The Court concludes that it has subject-matter jurisdiction, because diversity exists. Also, L. Asher's conservator had the authority to bind her and her estate to the Arbitration Agreement, and the Arbitration Agreement is within the FAA's scope. Further, the claims asserted are within the Arbitration Agreement's scope, and Erwin Associates has the power to enforce the Arbitration Agreement. Finally, the Arbitration Agreement's relevant part is not unconscionable. Accordingly, the Court grants Erwin Associates' Motion and denies Zangara's Motion.

## I. THE COURT HAS SUBJECT-MATTER JURISDICTION.

The Court has subject-matter jurisdiction, because diversity exists and the amount in controversy is greater than $75,000.00. As explained above, the Eighth Circuit and at least three judges in the District of New Mexico have held that in a situation where not all of the parties to a state court action are present in a federal court FAA action to compel arbitration of the state lawsuit, "diversity of citizenship is determined in these cases by the citizenship of the parties named in the proceedings before the district court, plus any indispensable parties who must be

joined pursuant to Rule 19." <u>Rutherford</u>, 605 F.3d at 491. In other words, the Court will not

"look through" to the state court action in diversity cases. Refusing to "look through" to the state

lawsuit is the most logical rule, because a contrary rule would

> [i]gnore[] the underlying facts and the Supreme Court's decision in *Moses H. Cone*. In that case, the Supreme Court stated that the independent basis of federal jurisdiction was diversity of citizenship. But it did not discuss that threshold issue, despite noting the presence of a non-diverse party who made the parallel state court action non-removable. 460 U.S. at 7 & n. 4
>
>  . . . .
>
> Even if no party challenged diversity jurisdiction, that the Supreme Court did not even discuss the issue is telling because in other cases it has noted that federal courts are obligated to consider lack of subject matter jurisdiction *sua sponte.*

<u>Rutherford</u>, 605 F.3d at 489-90 (footnote and internal citations omitted). Indeed, the "[t]he

Supreme Court 'does not normally overturn, or so dramatically limit, earlier authority *sub*

*silentio.*'" <u>Rutherford</u>, 605 F.3d at 490 (quoting <u>Shalala v. Illinois Council on Long Term Care,</u>

<u>Inc.</u>, 529 U.S. 1, 18 (2000)). The Court thus concludes that it will look only at the citizenship of

the parties before it to determine diversity.

Here, the parties before the Court are diverse. "Subject-matter jurisdiction under

28 U.S.C. § 1332(a)(1) requires: (i) complete diversity among the parties . . . .'" <u>Thompson v.</u>

<u>Intel Corp.</u>, 2012 WL 3860748, at *12 (citing 28 U.S.C. § 1332(a)). Erwin Associates "is a

Washington corporation with its principal place of business in Vancouver, Washington."

Response 2 at 3.

"[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only

of the same State as the decedent." 28 U.S.C. § 1332(c)(2). "Lucille Asher, deceased, was a

New Mexico citizen at the time of her death and at all times relevant to this Complaint."

Complaint to Compel Arbitration at 1, filed January 8, 2016 (Doc. 1). L. Asher "and the

personal representative of her estate were at all relevant times New Mexico residents."  Response 2 at 3.  The Court therefore concludes that diversity exists.

The amount in controversy requirement is also satisfied.  "Subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) requires . . . that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"  Thompson v. Intel Corp., 2012 WL 3860748, at *12 (citing 28 U.S.C. § 1332(a)).    Unlike determining the parties' citizenship, a court may "look through" to a possible arbitration award when evaluating the amount in controversy.  The Tenth Circuit has held that "[t]his court . . . finds persuasive the holding of other circuits that 'look through to the possible award resulting from the desired arbitration' to determine the amount in controversy."  Woodmen of the World Life Ins. Society v. Manganaro, 342 F.3d 1213, 1217 (10th Cir. 2003)(quoting Doctor's Assocs., Inc. v. Hamilton, 150 F.3d 157, 160 (2d Cir. 1998)).  "Accordingly, the requisite jurisdictional amount will be satisfied in a suit to compel arbitration unless it is legally certain that the stakes of the arbitration are $75,000 or less."  Woodmen of the World Life Ins. Society v. Manganaro, 342 F.3d at 1217.

Here, the Court cannot say that "it is legally certain that the stakes of the arbitration are $75,000 or less."  Woodmen of the World Life Ins. Society v. Manganaro, 342 F.3d at 1217. The underlying claims that the parties will arbitrate allege a wrongful death action for medical negligence.  See State Court Complaint ¶¶ 15-16, at 3.  Allegedly, "Ms. Asher went to the emergency room . . . [and] [f]ollowing abdominal surgery, she was diagnosed with suspected perforated appendicitis resulting in an abscess and a large area of infection."  State Court Complaint ¶ 13, at 3.  According to Zangara, "Ms. Asher died . . . of septic shock due to the abdominal infection."  State Court Complaint ¶ 14, at 3.  Zangara alleges that North Ridge was negligent "by failing to timely and properly diagnose Ms. Asher's appendicitis."  State Court

Complaint ¶ 16, at 3.  Given these allegations of medical negligence, it is not "legally certain that the stakes of the arbitration are $75,000 or less."  Woodmen of the World Life Ins. Society v. Manganaro, 342 F.3d at 1217.  It is difficult to imagine a wrongful death claim for less than $75,000.  Zangara has not stated that he will not take more than $74,999.99.  Nor has he argued that his case is worth less than $75,000.  Accordingly, this suit meets the amount in controversy requirement.  Because this case meets the diversity of citizenship and amount in controversy requirements, the Court has subject-matter jurisdiction.

## II.     L. ASHER'S CONSERVATOR HAD THE AUTHORITY TO BIND HER AND HER ESTATE TO THE ARBITRATION AGREEMENT.

L. Asher's conservator, Murphree CPAs, had the power to bind L. Asher and her estate to the Arbitration Agreement.[8]  Under New Mexico law, a conservator has the abilities to "pay or contest any claim; to settle a claim by or against the estate or the protected person by compromise, arbitration or otherwise."  N.M. Stat. Ann. § 45-5-424(C)(19).   A conservator is also empowered to "execute and deliver all instruments which will accomplish or facilitate the exercise of the powers vested in the conservator."  N.M. Stat. Ann. § 45-5-424(C)(25).  The power to "execute . . . all instruments which will accomplish or facilitate the exercise of the powers vested in the conservator" must logically include the power to execute an arbitration agreement.

For example, in facilitating the exercise of his or her enumerated powers to contest or settle a claim against the incapacitated person, the conservator may decide that, should any claims arise against the incapacitated person, the incapacitated person may prefer the speed and

_____

[8]The Court uses the past tense because a conservator's powers do not survive the incapacitated person's death.  See In re Borland, 2012-NMCA-108, ¶ 13, 288 P.3d 912, 916 ("These statutes only empower the conservator to act in particular ways while managing the protected person's affairs during the protected person's lifetime.").

privacy of arbitration. Indeed, many people do not want their financial or health information to become public record via litigation. Thus, a conservator may choose to sign arbitration agreements to "facilitate" his or her ability to "contest any claim" that may arise against the incapacitated person. The Court therefore concludes that a conservator has the power to enter into an arbitration agreement to "facilitate" his or her enumerated conservator powers.

Further, an arbitration agreement does not have to be executed before there is a prospect of litigation. See "Arbitration and Mediation," Justia, https://www.justia.com/trials-litigation/arbitration-mediation/ (last viewed November 7, 2017). The parties could have a dispute, and then enter into an arbitration agreement. See "Arbitration and Mediation," Justia, https://www.justia.com/trials-litigation/arbitration-mediation/ (last viewed November 7, 2017)(explaining that an arbitration agreement can be "signed after a dispute has arisen, wherein the parties agree that the dispute should be resolved by arbitration"). The Court therefore concludes that a New Mexico conservator logically has the power to enter into an arbitration agreement on an incapacitated person's behalf to facilitate the conservator's enumerated powers.

Here, Murphree CPAs signed the Arbitration Agreement on L. Asher's behalf. See Arbitration Agreement at 3. A court lawfully appointed Murphree CPAs as L. Asher's conservator. See Guardianship Order at 4. Because Murphree CPAs had the power to enter into an arbitration agreement on L. Asher's behalf to facilitate Murphree CPAs' enumerated power to contest any claim against L. Asher, the Arbitration Agreement binds L. Asher.

It may be plausible that a guardian should sign a nursing home agreement that contains an arbitration provision, because a guardian, not a conservator, "is entitled to custody of the incapacitated person and may establish the incapacitated person's place of abode within or without New Mexico." N.M. Stat. Ann. § 45-5-312(B)(1). In this case, W. Asher, L. Asher's

guardian, was given "final and ultimate authority to make all medical decisions for [L. Asher], including but not limited to making decisions regarding where [L. Asher] should reside." Guardianship Order at 4.

Zangara does not argue, however, that W. Asher was somehow deprived of his authority to make a decision regarding where L. Asher would live when Murphree CPAs signed the Arbitration Agreement. On the contrary, "William decided to try to admit Lucille to North Ridge," which he eventually did. Response 1 at 3. Murphree CPAs did not in some way infringe on W. Asher's power to determine where his mother lived by signing the Arbitration Agreement, because W. Asher had already decided where L. Asher would live. The Court therefore concludes that Murphree CPAs, as conservator, had the power to enter into the Arbitration Agreement on L. Asher's behalf.[9]

There can be, in some cases, a distinction between who decides something and who signs the documents effectuating the decision. For example, a client often makes decisions, but the attorney signs the necessary documents. Hence, even though W. Asher did not sign the Arbitration Agreement, nothing indicates that he did not decide where his mother would live. Murphree CPAs' signature on the Arbitration Agreement does not, without more, suggest that W. Asher did not make the decision. On the contrary, "William decided to try to admit Lucille to North Ridge," which he eventually did. Response 1 at 3.

_____

[9]The Court also decides that the conservator had the power to bind L. Asher to other major terms and conditions in the Resident Admission Agreement, which contains the Arbitration Agreement. Most importantly, Murphree CPAs had the power to bind L. Asher to pay the admission fee and the monthly fees that North Ridge required, see Arbitration Agreement at 1, because a conservator may "manage the property or financial affairs or both of a protected person," N.M. Stat. Ann. § 45-5-101(A). The Court notes, however, that the parties do not contest any part of the Resident Admission Agreement other than the arbitration provision.

Murphree CPAs' signature also binds L. Asher's estate following L. Asher's death. An arbitration agreement survives an incapacitated person's death for the purposes of a wrongful death action. In Krahmer, the "[p]laintiff filed a wrongful death action against the nursing home, which responded with a motion to compel arbitration, pursuant to an agreement signed when [the decedent] entered the nursing home." Krahmer, 2014-NMCA-001, ¶ 1, 315 P.3d at 299. The Court of Appeals of New Mexico held that, "because a wrongful death action is entirely derivative of the decedent's right to sue, a valid arbitration agreement signed by a competent party binds that party's estate and statutory heirs in a subsequent wrongful death action." Krahmer, 2014-NMCA-001, ¶ 1, 315 P.3d at 299. In short, an arbitration agreement survives death for the purposes of a wrongful death action. The Court therefore concludes that L. Asher's obligation to arbitrate the claims alleged in the state court wrongful death action survived L. Asher's death.

## III.    THE ARBITRATION AGREEMENT IS WITHIN THE FAA'S SCOPE.

The Court concludes that the Arbitration Agreement is within the FAA's scope. Section 2, the "primary substantive provision of the Act," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. at 24, provides: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In the Tenth Circuit, and in New Mexico courts, the "existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked." Avedon Eng'g Inc. v. Seatex, 126 F.3d at 1287. When arbitration's applicability is in dispute, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Mitsubishi Motors

Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. at 626 (quoting Moses H. Cone Mem'l Hosp. v.

Mercury Constr. Corp., 460 U.S. at 24-25).

Here, there is clearly the "existence of an agreement to arbitrate." Avedon Eng'g Inc. v.

Seatex, 126 F.3d at 1287.  Indeed, the Arbitration Agreement states:

> Agreement to Resolve Disputes Through Arbitration:
> The Facility, Resident, and the Resident's Representative agree, as an important and integral part of this Agreement, that any and all claims and disputes arising from or related to this Agreement or to Resident's care, services, or residency at the Facility shall be resolved by submission to neutral, binding arbitration rather than a trial before a judge or jury (except for the specific claims and disputes set forth in the following paragraph) . . . . This arbitration clause binds all parties to this Agreement and their spouses, heirs, representatives, executors, administrators, successors, and assigns, as applicable.

Arbitration Agreement at 3.  The Arbitration Agreement also meets the commerce requirement.

"A written provision in . . . a contract evidencing a transaction involving commerce to settle by

arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract."  9 U.S.C. § 2.  "[T]he word 'involving' is broad and is indeed the functional equivalent

of 'affecting.'"  Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. at 273.  The

Supreme Court has "described the Act's reach expansively as coinciding with that of the

Commerce Clause."  Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. at 274.  "In

*Wickard*[10], the Supreme Court took the then extraordinary step of holding that the Commerce

Clause[11] gave Congress the power to regulate the intrastate act of a farmer growing a small

amount of wheat for the farmer's own table."  Rainbow Health Care Center, Inc. v. Crutcher,

---

[10]Wickard v. Filburn, 317 U.S. 111 (1942).

[11]U.S. CONST. art. 1, § 8, cl. 3.

2008 WL 268321, at *3 (N.D.O.K. 2008)(Payne, J.)(citing <u>Wickard v. Filburn</u>, 317 U.S. at 127-28).  <u>Wickard v. Filburn</u> vastly expanded Congress' power under the Commerce Clause, and "[r]ead together, *Wickard*, *Katzenbach*[12] and *Citizens Bank*[13] stand for the proposition that the FAA reaches the broadest amount of commercial activity allowed by the Constitution -- which can include a local business buying supplies from a company procuring those supplies from out of state."  <u>Rainbow Health Care Center, Inc. v. Crutcher</u>, 2008 WL 268321, at *4.

Here, the Arbitration Agreement affects interstate commerce.  Erwin Associates "received supplies and equipment which were purchased from out-of-state suppliers." Memorandum at 7.  The Court thus concludes that the Arbitration Agreement affects interstate commerce.  <u>See</u> <u>Wickard v. Filburn</u>, 317 U.S. at 127-28.  For these reasons, the Arbitration Agreement is within the FAA's scope, and therefore it is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.

## IV.      THE CLAIMS ASSERTED ARE WITHIN THE ARBITRATION AGREEMENT'S SCOPE.

The underlying claims are within the Arbitration Agreement's scope.  The underlying claims allege that "healthcare providers who were employees, agents, or apparent agents of North Ridge breached the standard of care by failing to timely and properly diagnose Ms. Asher's appendicitis, and they failed to timely and properly treat her acute abdomen."  State Court Complaint at 3.  Zangara further alleges that "North Ridge was negligent in hiring

---

[12]<u>Katzenbach v. McClung</u>, 379 U.S. 294, 302 (1964)(reaffirming the broad extent of Congress' Commerce Clause power in <u>Wickard v. Filburn</u>).

[13]<u>Citizens Bank v. Alafabco, Inc.</u>, 539 U.S. 52, 56 (2003)(applying Congress' broad Commerce Clause power in the FAA's context).

unqualified staff and in granting clinical privileges to and permitting the continued exercise of clinical privileges by physicians North Ridge knew or reasonably should have known were not qualified to exercise clinical privileges with reasonable skill." State Court Complaint at 4.

The Arbitration Agreement states:

> The Facility, Resident, and the Resident's Representative agree, as an important and integral part of this Agreement, that <u>any and all claims</u> and disputes arising from or related to this Agreement or to Resident's <u>care, services</u>, or residency at the Facility <u>shall be resolved by submission to neutral, binding arbitration</u> rather than a trial before a judge or jury . . . .

Arbitration Agreement at 3 (emphases added). "All claims" means "all claims." <u>See</u> <u>Christmas v. Cimarron Realty Co.</u>, 1982-NMSC-079, ¶ 8, 648 P.2d 788, 790 (holding that "the terms of the arbitration agreement are to be interpreted by the rules of contract law" and that "courts will apply the plain meaning of contract language as written in interpreting terms of a contract"). Further, "Resident's care" necessarily encompasses the medical care that L. Asher received, including her diagnosis and treatment. <u>See</u> <u>Christmas v. Cimarron Realty Co.</u>, 1982-NMSC-079, ¶ 8, 648 P.2d at 790   "Services" necessarily includes the staff that North Ridge hired and to whom they granted clinical privileges to provide medical services to L. Asher. <u>See</u> <u>Christmas v. Cimarron Realty Co.</u>, 1982-NMSC-079, ¶ 8, 648 P.2d at 790   The Court thus concludes that the claims alleged are within the Arbitration Agreement's scope.

## V.     ERWIN ASSOCIATES HAS THE POWER TO ENFORCE THE ARBITRATION AGREEMENT.

Erwin Associates may enforce the Arbitration Agreement as an intended third-party beneficiary.

> A third-party may have an enforceable right against an actual party to a contract if the third-party is a beneficiary of the contract. A third-party is a beneficiary if the actual parties to the contract intended to benefit the third-party. The intent to benefit the third-party must appear either from the contract itself or from some

evidence that the person claiming to be a third party beneficiary is an intended beneficiary.

Callahan v. New Mexico Federation of Teachers–TVI, 2006-NMSC-010, ¶ 20, 131 P.3d at 58 (internal quotations omitted)(citing Fleet Mortgage Corp. v. Schuster, 1991-NMSC-046, ¶¶ 1-4, 811 P.2d at 82-83).

Here, "intent to benefit the third-party" appears "from the contract itself." Callahan v. New Mexico Federation of Teachers–TVI, 2006-NMSC-010, ¶ 20, 131 P.3d at 58. The Arbitration Agreement expressly "binds all parties to this Agreement and their spouses, heirs, representatives, executors, administrators, successors, and assigns, as applicable" to arbitration. Arbitration Agreement at 3. The categories of people listed are thus intended third-party beneficiaries, because "the actual parties to the contract intended to benefit" them by ensuring that they would receive arbitration's benefits. Callahan v. New Mexico Federation of Teachers–TVI, 2006-NMSC-010, ¶ 20, 131 P.3d at 58. Arbitration has many benefits "in part because '[i]t promotes both judicial efficiency and conservation of resources by all parties.'" Piano v. Premier Distrib. Co., 2005-NMCA-018, ¶ 5, 107 P.3d at 13 (alteration in original). The Court thus concludes that, when the parties bound their "spouses, heirs, representatives, executors, administrators, successors, and assigns, as applicable" to arbitration, Arbitration Agreement at 3, the parties intended those categories of people to receive arbitration's benefits, including "conservation of resources by all parties." Piano v. Premier Distrib. Co., 2005-NMCA-018, ¶ 5, 107 P.3d at 13 (alteration in original).

Having concluded that the parties' "spouses, heirs, representatives, executors, administrators, successors, and assigns" are the Arbitration Agreement's intended third-party beneficiaries, the only remaining question is whether Erwin Associates fits one of these descriptions. The Court concludes that Erwin Associates is Albuquerque Care's

"representative."  Erwin Associates is thus an intended third-party beneficiary to the Arbitration

Agreement and therefore may enforce it.

Albuquerque Care is a party to the Arbitration Agreement.  <u>See</u> Arbitration Agreement at

1.  In 2011, Albuquerque Care entered into a Management Agreement with Erwin Associates.

<u>See</u> Management Agreement at 1.  According to the Management Agreement, Erwin Associates

"will perform all services necessary to provide and maintain quality care and management for the

Facility and the Residents . . . including . . . [r]epresenting the Facility in <u>all dealings</u> with

regulatory authorities, creditors, <u>Residents</u>, Facility Employees and other personnel and

insurers."  Management Agreement at 2 (emphases added).  In short, Erwin Associates

contracted to "represent" "the facility," meaning North Ridge, which Albuquerque Care owns, in

"all dealings" with "Residents."  L. Asher was a North Ridge "resident."  Thus, Erwin

Associates agreed to "represent" Albuquerque Care in "all dealings" with L. Asher.

Accordingly, the Court concludes that Erwin Associates is an Albuquerque Care "representative"

for the Arbitration Agreement's purposes.  Because Erwin Associates is an Albuquerque Care

"representative," it is an intended third-party beneficiary and, consequently, may enforce the

Arbitration Agreement.

## VI.  THE ARBITRATION AGREEMENT'S RELEVANT PART IS NOT UNCONSCIONABLE.

The Court concludes that the Arbitration Agreement's relevant part is not

unconscionable.  "A contract can be procedurally or substantively unconscionable."  <u>Dalton v.</u>

<u>Santander Consumer USA, Inc.</u>, 2016-NMSC-035, ¶ 7, 385 P.3d at 621.  "Substantive

unconscionability relates to the content of the contract terms and whether they are illegal,

contrary to public policy, or grossly unfair."  <u>Fiser v. Dell Computer Corp.</u>, 2008-NMSC-046,

¶ 20, 188 P.3d at 1221 (citing <u>Padilla v. State Farm Mut. Auto. Ins. Co.</u>, 2003-NMSC-011, ¶ 14,

68 P.3d 901, 907; <u>Guthmann v. La Vida Llena</u>, 1985-NMSC-106, ¶ 16, 709 P.2d 675, 679, <u>disapproved of on other grounds by</u> <u>Cordova v. World Fin. Corp. of N.M.</u>, 2009-NMSC-021, ¶ 31, 208 P.3d at 909). "Procedural unconscionability," by contrast, "is determined by analyzing the circumstances surrounding the contract's formation, such as whether it was an adhesive contract and the relative bargaining power of the parties." <u>Fiser v. Dell Computer Corp.</u>, 2008-NMSC-046, ¶ 20, 188 P.3d at 1221 (citing <u>Guthmann v. La Vida Llena</u>, 1985-NMSC-106, ¶ 16, 709 P.2d at 679).

## A. THE ARBITRATION AGREEMENT IS NOT PROCEDURALLY UNCONSCIONABLE.

"Procedural unconscionability may be found where there was inequality in the contract formation." <u>State ex rel. King v. B & B Inv. Grp., Inc.</u>, 2014-NMSC-024, ¶ 27, 329 P.3d at 669. A contract is procedurally unconscionable "only where the inequality is so gross that one party's choice is effectively non-existent." <u>Guthmann v. La Vida Llena</u>, 1985-NMSC-106, ¶ 18, 709 P.2d at 679. Whether a party has meaningful choice is "determined by examining the circumstances surrounding the contract formation[], including the particular party's ability to understand the terms of the contract and the relative bargaining power of the parties." <u>Guthmann v. La Vida Llena</u>, 1985-NMSC-106, ¶ 16, 709 P.2d at 679 (internal citations omitted). Consequently, "[a]nalyzing procedural unconscionability requires the court to look beyond the four corners of the contract and examine factors 'including the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other.'" <u>State ex rel. King v. B & B Inv. Grp., Inc.</u>, 2014-NMSC-024, ¶ 27, 329 P.3d at 669 (quoting <u>Cordova v. World Fin. Corp. of N.M.</u>, 2009-NMSC-021, ¶ 27, 208 P.3d at 907-08).

Here, the Arbitration Agreement is not procedurally unconscionable. The Court cannot soundly say that "the inequality is so gross that one party's choice is effectively non-existent." Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 18, 709 P.2d at 679. Whether a party has meaningful choice is "determined by examining the circumstances surrounding the contract formation[], including the particular party's ability to understand the terms of the contract . . . ." Guthmann v. La Vida Llena, 1985-NMSC-106, ¶ 16, 709 P.2d at 679 (internal citations omitted). Here, L. Asher's conservator, Murphree CPAs, signed the Arbitration Agreement, which includes the statement: "I have received, read, understand and agree to the provisions of this Agreement (including Section 13 regarding arbitration and the Exhibit regarding Risks in Assisted Living)." Arbitration Agreement at 3. The Court therefore cannot say that Murphree CPAs did not understand the contract's terms.

The Court must also consider factors such as "the relative bargaining strength, sophistication of the parties, and the extent to which either party felt free to accept or decline terms demanded by the other." State ex rel. King v. B & B Inv. Grp., Inc., 2014-NMSC-024, ¶ 27, 329 P.3d at 669. Regarding the relative bargaining strength, and the extent to which either party felt free to accept or decline the Arbitration Agreement's terms, there is no evidence suggesting that L. Asher could not have gone to another nursing home. Zangara asserts that W. Asher was "desperate to ensure her healthcare needs were met and f[elt] pressure to act quickly," so he "decided to try to admit Lucille to North Ridge." Response 1 at 3. The party asserting an unconscionability defense, however, "bears the burden of proving that a contract or a portion of a contract should be voided as unconscionable." Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 7, 385 P.3d at 621. Zangara does not mention the possibility of placing L. Asher in a different nursing home, so the Court cannot soundly say that there was unequal bargaining

strength, or that W. Asher and Murphree CPAs did not feel free to decline the Arbitration Agreement and find another nursing home for L. Asher. See Spradlin, 893 F. Supp. 2d at 1185 ("Defendant neither argues nor demonstrates that there were no other suitable long-term care facilities available in the Hobbs area.").

Regarding the parties' sophistication, the person who signed the Arbitration Agreement is Linda Murphree of Murphree CPAs and not L. Asher. See Arbitration Agreement at 3. "Linda Murphree has been a Certified Public Accountant since 1982" and heads the Eldercare and Trustee Services department of an Albuquerque accounting firm. See "Our Team," Urbielewicz Murphree CPA's PC, http://corralescpas.com/our-team/ (last viewed November 1, 2017). The Court therefore concludes that Linda Murphree is a sophisticated party.

The Court further concludes that the Arbitration Agreement is not a contract of adhesion. "When assessing procedural unconscionability, courts should consider whether the contract is one of adhesion." Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 44, 259 P.3d 803, 817. An adhesion contract is a standardized contract that a transacting party with superior bargaining strength offers to a "weaker party on a take-it-or-leave-it basis, without opportunity for bargaining." Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 44, 259 P.3d at 817. "Although not all adhesion contracts are unconscionable, an adhesion contract is procedurally unconscionable and unenforceable 'when the terms are patently unfair to the weaker party.'" Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 44, 259 P.3d at 817 (quoting Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 33, 208 P.3d at 910).

> Three elements must be satisfied before an adhesion contract may be found. First, the agreement must occur in the form of a standardized contract prepared or adopted by one party for the acceptance of the other. Second, the party proffering the standardized contract must enjoy a superior bargaining position because the weaker party virtually cannot avoid doing business under the particular contract terms. Finally, the contract must be offered to the weaker party on a take-it-or-

leave-it basis, without opportunity for bargaining.

Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 33, 208 P.3d at 910.  First, Zangara never specifically alleges that the Arbitration Agreement is a "standardized contract."  Although the Arbitration Agreement may be a standardized contract, the party asserting an unconscionability defense "bears the burden of proving that a contract or a portion of a contract should be voided as unconscionable."  Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 7, 385 P.3d at 621 (citing Strausberg v. Laurel Healthcare Providers, LLC, 2013-NMSC-032, ¶¶ 24, 39, 48, 304 P.3d at 415).  The Court cannot simply assume that the Arbitration Agreement is a standardized contract.  Zangara has thus not satisfied an adhesion contract's first element.

Even if the Arbitration Agreement is a standardized contract, the Court cannot soundly say that "the party proffering the standardized contract . . . enjoy[ed] a superior bargaining position because the weaker party virtually [could not] avoid doing business under the particular contract terms."  Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 33, 208 P.3d at 910. Zangara "neither argues nor demonstrates that there were no other suitable long-term care facilities available" for L. Asher.  Spradlin, 893 F. Supp. 2d at 1186.  Without such information, the Court cannot soundly say that L. Asher and her representatives "virtually [could not] avoid doing business under the particular" Arbitration Agreement.  Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 33, 208 P.3d at 910.

Finally, Zangara meets the third element.  "The contract must be offered to the weaker party on a take-it-or-leave-it basis, without opportunity for bargaining."  Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 33, 208 P.3d at 910.  Zangara does specifically make such an allegation.  See Zangara's Motion at 14.  The Court concludes, however, that, because Zangara

has not satisfied the first two elements, the contract is not one of adhesion.  For these reasons, the Arbitration Agreement is not procedurally unconscionable.

**B.    THE ARBITRATION AGREEMENT'S RELEVANT PART IS NOT SUBSTANTIVELY UNCONSCIONABLE.**

Although the eviction provision in the Arbitration Agreement is substantively unconscionable, the Agreement's provisions that cover the underlying negligence claims in this case are valid.  Substantive unconscionability requires courts "to consider 'whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns'" to determine "'the legality and fairness of the contract terms themselves.'"  Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 8, 385 P.3d at 621 (quoting Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 22, 208 P.3d at 907).  Accordingly, when examining a contract for substantive unconscionability, courts must "examine the terms on the face of the contract and to consider the practical consequences of those terms."  Dalton v. Santander Consumer USA, Inc., 2016-NMSC-035, ¶ 8, 385 P.3d at 621-22.

With respect to arbitration agreements specifically, the Supreme Court of New Mexico has held that arbitration agreements are substantively unconscionable and thus unenforceable when the arbitration agreement contains a unilateral carve-out that explicitly exempts from mandatory arbitration those judicial remedies that a lender is likely to need, while providing no such exemption for the borrower.  See Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶¶ 51-54, 259 P.3d at 818-19; Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 32, 208 P.3d at 907-10.  In Cordova v. World Finance Corporation of New Mexico, for example, the Supreme Court of New Mexico stated that "[c]ontract provisions that unreasonably benefit one party over another are substantively unconscionable."  2009-NMSC-021, ¶ 25, 208 P.3d at 908.

In that case, a loan contract included a purportedly bilateral arbitration clause containing a unilateral carve-out provision that exempted the lender from mandatory arbitration when the lender sought remedies, "including[,] but not limited to, judicial foreclosure or repossession" in the event of the borrower's default. Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 3, 208 P.3d at 904 (internal quotation marks omitted). The Supreme Court of New Mexico held that the arbitration clause was "grossly unreasonable" and against New Mexico public policy, because the agreement required the borrower to arbitrate any of the borrower's claims while reserving to the lender "the exclusive option of seeking its preferred remedies through litigation." Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 20, 208 P.3d at 907. Accordingly, the Supreme Court of New Mexico held that the arbitration agreement was substantively unconscionable. See Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 32, 208 P.3d at 910.

Next, in Rivera v. American General Financial Services, Inc., the Supreme Court of New Mexico confronted a similar loan contract in which an arbitration agreement required the borrower to arbitrate any claims against the lender while exempting from mandatory arbitration the lender's "self-help or judicial remedies" concerning the property securing the transaction and any claims that the lender might have "[i]n the event of a default." 2011-NMSC-033, ¶ 3, 259 P.3d at 807-08. As in Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 32, 208 P.3d at 910, in Rivera v. American General Financial Services, Inc., the Supreme Court of New Mexico again held the arbitration agreement substantively unconscionable, because the arbitration clause allowed the lender to "retain[] the right to obtain through the judicial system the only remedies it [is] likely to need," while "forcing [the borrower] to arbitrate any claim she may have." 2011-NMSC-033, ¶ 53, 259 P.3d at 818-19. Accordingly, the Supreme Court of New Mexico held

that the arbitration agreement was unreasonably one-sided and, therefore, unenforceable qua substantively unconscionable. Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 54, 259 P.3d at 818-19.

In essence, the Supreme Court of New Mexico has shown this pattern: if an arbitration agreement exempts from arbitration claims that the stronger party will likely bring, but mandates arbitration for claims that the weaker party will likely bring, then the arbitration agreement is substantively unconscionable. See Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶¶ 51-54, 259 P.3d at 818-19; Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 20, 208 P.3d at 907.

Here, Zangara argues that, "[b]y excluding claims or disputes involving or related to eviction, the Agreement requires arbitration of the vast majority of claims that would be brought by the patient, who is the weaker party, while excluding those disputes that would exclusively be pursued by the nursing home." Response 1 at 12. Indeed, the Arbitration Agreement explicitly exempts from arbitration claims for eviction, a claim that only the nursing home would bring. The Agreement states: "The Parties agree that any claim or dispute involving or related to unlawful detainer (eviction) proceedings shall not be subject to arbitration unless both parties agree to arbitrate such proceedings." Arbitration Agreement at 3. In light of the Supreme Court of New Mexico precedent in Rivera v. American General Financial Services, Inc., 2011-NMSC-033, ¶¶ 51-54, 259 P.3d at 818-19, and Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 20, 208 P.3d at 907, the Court must conclude that this eviction unilateral carve-out to benefit exclusively the stronger party, the nursing home, is substantively unconscionable under New Mexico law, and thus unenforceable.

Despite Zangara's protests, however, the rest of the Arbitration Agreement is still

enforceable. It states, in relevant part, "that <u>any and all claims</u> and disputes arising from or related to this Agreement" will be arbitrated. Arbitration Agreement at 3 (emphasis added). This part of the agreement is bilateral and does not unilaterally exempt any claims from arbitration, including the negligence claims in this case. <u>See</u> State Court Complaint ¶¶ 16-21, at 3-4. Because this part of the agreement is bilateral and does not contain any carve-outs, the Court concludes that it is "commercially reasonable and fair." <u>Dalton v. Santander Consumer USA, Inc.</u>, 2016-NMSC-035, ¶ 8, 385 P.3d at 621 (explaining that substantive unconscionability requires courts "to consider 'whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns' to determine 'the legality and fairness of the contract terms themselves'")(quoting <u>Cordova v. World Fin. Corp. of N.M.</u>, 2009-NMSC-021, ¶ 22, 208 P.3d at 907).

The Court will enforce this part of the Arbitration Agreement. "If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term." <u>Cordova v. World Fin. Corp. of N.M.</u>, 2009-NMSC-021, ¶ 39, 208 P.3d at 911. "Courts may render a contract <u>or portions of a contract</u> unenforceable under the equitable doctrine of unconscionability when the terms are 'unreasonably favorable to one party while precluding a meaningful choice of the other party.'" <u>Dalton v. Santander Consumer USA, Inc.</u>, 2016-NMSC-035, ¶ 6, 385 P.3d 619, 621 (alteration added)(quoting <u>Cordova v. World Fin. Corp. of N.M.</u>, 2009-NMSC-021, ¶ 21, 208 P.3d 901, 907)(emphasis added).

In <u>Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, 68 P.3d 901</u>, the Supreme Court of New Mexico, in an opinion that former Justice Serna wrote, addressed an arbitration

agreement which bound both parties to arbitrate.  See 2003-NMSC-011, ¶ 2, 68 P.3d at 902.  For

arbitration awards over a specified dollar amount, however, "the contract provided that the

arbitration was subject to de novo appeal by either party."  2003-NMSC-011, ¶ 2, 68 P.3d at 902.

The Supreme Court of New Mexico held that, "to avoid the unconscionable result, we strike the

de novo appeal provision in the contract and leave the remainder of the contract intact.  Because

the appeal provision is severable from the agreement to arbitrate, the insurance contract now

contains a mutual agreement to binding arbitration."  2003-NMSC-011, ¶ 18, 68 P.3d at 909.[14]

---

[14]In more recent years, the Supreme Court of New Mexico has repeatedly held portions of arbitration agreements unconscionable and refused to sever them, opting instead to trash entire arbitration agreements to which the parties agreed.  See Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶55, 259 P.3d at 819 ("The arbitration provisions must be struck in their entirety."); Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 40,  208 P.3d at 911 ("We must strike down the arbitration clause in its entirety . . . .").  The Supreme Court of New Mexico couches these holdings under the unconscionability doctrine, yet "[t]he FAA's preemptive effect might extend even to grounds traditionally thought to exist 'at law or in equity for the revocation of any contract.'"  Concepcion, 563 U.S. at 341 (quoting 9 U.S.C. § 2).  "Although § 2's saving clause preserves generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives."  Concepcion, 563 U.S. at 343.  "A federal statute's saving clause 'cannot in reason be construed as [allowing] a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act.  In other words, the act cannot be held to destroy itself.'"  Concepcion, 563 U.S. at 343 (quoting American Telephone & Telegraph Co. v. Central Office Telephone, Inc., 524 U.S. 214, 227-28 (1998)).  The Court therefore must ensure that state courts are not using contract defenses such as unconscionability to destroy the FAA.

To be sure, the Supreme Court of New Mexico justifies its holdings under the traditional doctrine of unconscionability.  But "[e]ven Plato recognized that a philosopher king would be unacceptable unless he could hide his naked power by a 'noble fiction.'  It follows, of course, that platonists on the bench do not avow, but only practice, activism."  Wallace Mendelson, The Judge's Art, 109 U. PA. L. REV. 524, 533 (1961).

The Supreme Court of New Mexico has boldly gone so far as to invalidate an arbitration agreement containing a class action ban "because it is contrary to public policy and therefore unconscionable."  Fiser v. Dell Computer Corp, 2008-NMSC-046, ¶ 19, 188 P.3d at 1221.  But "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary" applies in every state of the union.  Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp, 460 U.S. at 24.  If the Supreme Court of New Mexico continues waging war on arbitration agreements under the guise of unconscionability, the Court may find that the FAA preempts such holdings.

Here, while the Court holds that the Arbitration Agreement's eviction provision is substantively unconscionable under New Mexico law, the eviction provision "is severable from the agreement to arbitrate," because the Arbitration Agreement's remainder "now contains a mutual agreement to binding arbitration." 2003-NMSC-011, ¶ 18, 68 P.3d at 909. Further, it

─────────────────────

Nevertheless, although the fact that the current Supreme Court of New Mexico has struck down entire arbitration provisions in two recent cases is troubling, the Court chooses not to read the Supreme Court of New Mexico as subverting the FAA yet. In Rivera v. Am. Gen. Fin. Servs., Inc., the Supreme Court of New Mexico struck an entire arbitration agreement and appeared to distinguish Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, 68 P.3d 901, explaining that "as in *Cordova* the unconscionable terms are central to the arbitration scheme and cannot be severed without substantially altering the method of dispute resolution contractually agreed on by the parties." Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 56, 259 P.3d at 819. The Supreme Court of New Mexico continued that it would not rewrite a contract "that is laced with unenforceable terms that were 'central to the original mechanism[] for resolving disputes between the parties.'" 2011-NMSC-033, ¶ 56, 259 P.3d at 819 (quoting Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, ¶ 40, 208 P.3d at 912).

Here, however, the eviction provision can "be severed without substantially altering the method of dispute resolution contractually agreed on by the parties," Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 56, 259 P.3d at 819, because the Arbitration Agreement says that one claim, eviction, will be brought in court, but almost all other claims will be arbitrated. Arbitration Agreement at 3. Further, the Arbitration Agreement is not "laced with unenforceable terms," but contains only one unenforceable term, the eviction provision. Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 56, 259 P.3d at 819. Finally, the eviction provision is not "central to the arbitration scheme" nor "central to the original mechanism[] for resolving disputes between the parties," because it is a unilateral carve-out of one action that may be brought in court, while all other actions must be arbitrated. Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, ¶ 56, 259 P.3d at 819. The Court thus concludes -- perhaps generously -- that, in this case, the Supreme Court of New Mexico would follow Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, 68 P.3d 901, rather than Rivera v. Am. Gen. Fin. Servs., Inc., 2011-NMSC-033, 259 P.3d 803, or Cordova v. World Fin. Corp. of N.M., 2009-NMSC-021, 208 P.3d 901.

The Court also concludes that, because there is no sound reason not to sever in this case, because severing best promotes the FAA's policy of liberally enforcing arbitration agreements, and because Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, 68 P.3d 901 has not been overruled, the Court will choose to read Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, 68 P.3d 901 as still good law, rather than relying on the Supreme Court of New Mexico's more recent holdings, which suggest that the current Supreme Court of New Mexico may not apply Padilla v. State Farm Mut. Auto. Ins. Co., 2003-NMSC-011, 68 P.3d 901, again.

would make little sense for the Court to trash the entire Arbitration Agreement because of one unconscionable provision that is not related to this case. The underlying claims in this case are about medical negligence and have nothing to do with eviction. See State Court Complaint ¶¶ 16-21, at 3-4. In short, the rest of the Arbitration Agreement remains enforceable under valid New Mexico law.

**IT IS ORDERED** that (i) the Plaintiff's Motion to Compel Arbitration, filed January 8, 2016 (Doc. 2), is granted; and (ii) the requests in the Defendant's Motion to Dismiss Plaintiff's Complaint to Compel Arbitration and Memorandum Brief in Support, filed February 4, 2016 (Doc. 15), are denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Tomas J. Garcia
Michelle A. Hernandez
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

James H. Wood
Thomas Gordon Wood
Law Office of James H. Wood, P.C.
Albuquerque, New Mexico

  *Attorneys for the Defendant*